OHIO CASUALTY INSURANCE COMPANY ET AL., APPELLEES, *v.* YOBY ET AL., APPELLANTS.

(Nos. 48539 and 48540 — Decided February 25, 1985.)

*Robert Hesser* and *Richard Disanti,* for appellees.

*Frank G. Bolmeyer* and *Martin J. Sammon,* for appellant Yoby.

*William Hawal,* for appellant Gallagher.

PRYATEL, J. Dawn Yoby and Kathleen Gallagher, defendants (appellants), ask this court to enter summary judgment for them and to reverse the summary judgment granted to plaintiffs (appellees), Ohio Casualty Insurance Company and West American Insurance Company, on the companies' actions for declaratory judgment.

We affirm for the reasons given below.

Since these consolidated cases involved different plaintiffs and defendants, initially we will discuss them separately.

On May 30, 1982, appellant Dawn Yoby, along with two other passengers, was in an automobile driven by Allen Wright at an excessive rate of speed. Wright lost control of the vehicle and Yoby and the two other passengers were injured in the ensuing accident. Yoby was hospitalized for one month. Her medical expenses totaled $17,932.49.

Wright, the driver, was insured by State Farm Automobile Insurance Company. The limits of liability in his policy were $50,000 per person and $100,000 per occurrence. Because injuries also were sustained by the other passengers, Yoby could recover only $27,500, an amount claimed to be inadequate to compensate her for her injuries.

At the time of the accident, Yoby was insured under her own automobile liability insurance policy issued by Ohio Casualty Insurance Company, one of the appellees. It provided her with underinsured motorists coverage in the amount of $25,000.

On January 31, 1981, the other appellant, Kathleen Gallagher, was the only passenger in an automobile involved in a collision with another automobile operated by Michael Rach.

Rach had a liability insurance policy with Nationwide Insurance Company with $100,000 single limit coverage. Gallagher was offered and accepted a settlement of $95,000.

At the time of the accident, Gallagher was insured under her own automobile liability insurance policy issued by West American Insurance Company, the remaining appellee. It provided underinsured motorist coverage in the amount of $100,000.

In both cases, the appellants and appellees agreed to settlements, provided that the appellants treated their settlement proceeds as equal to the limits of their underinsured policies while they "retained their rights under those policies."

Both appellants made demands on appellee insurance companies for pay-

ment of additional damages on the ground that they were not fully compensated for their injuries pursuant to the underinsured coverage of their own contracts.

In both instances, the appellee insurance companies declined to make any payments on the basis that the negligent drivers had liability insurance coverage equal to the amounts of underinsured motorist coverage of each appellant.

To resolve the dispute, the two insurance companies filed complaints for declaratory judgment. They asked the court to find that appellants were not entitled to payments under the underinsured motorists coverage of their policies. All (four) parties sought summary judgments.

The court granted summary judgment to the insurance companies and denied it to the two insureds. They appeal, citing a similar assignment of error. Both cases were consolidated for our review.

Assignment of Error No. I (case No. 48539):

"I. The trial court erred to the prejudice of the defendant-appellant, Dawn Yoby, in sustaining the motion of plaintiff-appellee for summary judgment and in overruling the cross-motion of the defendant-appellant for summary judgment."

Assignment of Error No. I (case No. 48540):

"I. The court below erred in granting summary judgment in favor of plaintiff, West American Insurance Company, against defendant, Kathleen Gallagher, and in failing to grant defendant's cross-motion for summary judgment."

Both appellants contend that their policies read together with the "impor-

tant notice" about underinsured motorists coverage sent to them by appellee insurance companies result in an ambiguity which should be resolved in their favor.

Underinsured motorists coverage was provided in both of appellants' policies by way of amendments to Part C which provides for uninsured motorists coverage. Such inclusion in uninsured motorist coverage was authorized by statute.[1] Part C stated in pertinent part:

"PART C UNINSURED MOTORIST COVERAGE

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

"1. Sustained by a covered person; and

"2. Caused by an accident.

"The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

"* * *

" 'Uninsured motor vehicle' means a land motor vehicle * * *:

"1. To which no bodily injury liability bond or policy applies at the time of the accident.

"2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged."

Underinsured coverage then is added to the above as an amendment to Part C. The amendment states in pertinent part:

[1] R.C. 3937.181, effective June 25, 1980, provided:

"(D) Nothing in this section shall prohibit the inclusion of 'underinsured motorist' coverage in any 'uninsured motorist' coverage provided in compliance with section 3937.18 of the Revised Code."

"UNINSURED MOTORISTS COVERAGE

"Part C is amended as follows:

"A. The following is added to the first paragraph of the Insuring Agreement:

"We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

"* * *

"B. With respect to the vehicles shown in the Declarations for which a premium for Underinsured [sic] Motorists Coverage is shown, part 2 of the definition of 'uninsured motor vehicle' is replaced by the following:

"2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the limit of liability for this coverage."

Thus, in case of inadequate insurance, the underinsurance provision would be triggered, but only if the tortfeasor's coverage is less than the underinsured policy limits.

Underinsured motorist coverage is an option by which an insured may voluntarily predetermine the amount of insurance he desires to protect him in the event of injury by a negligent motorist who has liability insurance in an amount less than that predetermined amount.

We are urged by appellants to find an ambiguity by virtue of the separate circular[2] sent to appellants and accompanying their insurance policy amendments. Apparently in an effort to provide the information mandated by statute,[3] the circular stated:

"IMPORTANT NOTICE TO POLICY HOLDER REGARDING UNDERINSURED MOTORISTS COVERAGE

"A recent act of the Ohio Legislature requires that Underinsured Motorists Coverage be offered to you *up to the limits of your Uninsured Motorists Coverage.* Because we feel it is extremely important that you and others who ride in your car be protected against the underinsured driver, we have added Underinsured Motorists Coverage to your policy, provided you already have Uninsured Motorists Coverage. The premiums for this important coverage are shown on the reverse side of this card. If you decide not to carry Underinsured Motorists Coverage, please contact your agent.

"UNDERINSURED MOTORISTS COVERAGE protects you and the others under your policy against the negligent driver whose insurance coverage is not adequate to pay for your injury." (Emphasis added.)

The insurance companies contend the circular is not at variance with their denial of additional compensation to the appellants. They assert that if the tortfeasor's coverage is sufficient to pay a loss up to the policyholder's underinsured motorists limits, the underinsured motorists coverage is not involved. They argue that here the tortfeasors' coverage limits were equal to the limits of the underinsured motorists coverage of appellants, hence they (appellees) are not liable for any additional damages.

The appellees maintain their argument is supported by the policies and the language of R.C. 3937.181(A) which was in effect at the time relevant to these

[2] The circular is not an amendment to the policy and should not be confused with the endorsement which provided the underinsured motorists coverage.

[3] R.C. 3937.181(B) provided in pertinent part: "Each such insurance company shall provide information * * * as to the type and cost of protection available under underinsured motorist coverage to permit such applicants and renewal policyholders to exercise the option to purchase such coverage. Insurance companies shall not be required to obtain or retain written rejections of such coverage."

claims. R.C. 3937.181(A) (since repealed) stated in pertinent part:

"As used in this section, 'underinsured motorist coverage' means coverage in an automobile or motor vehicle liability policy protecting an insured against loss for bodily injury * * * where the limits of coverage available for payment to the insured under all bodily injury * * * insurance policies covering persons liable to the insured *are insufficient to pay the loss up to the insured's uninsured motorist coverage limits.*" (Emphasis added.)

Appellees argue that under the statute underinsured motorists coverage comes into play only when the tortfeasor's coverage is less than the limits of the damaged person's own underinsurance protection.

The insurance companies refer us to *Hagen* v. *J.C. Penney Cas. Ins. Co.* (1984), 16 Ohio App. 3d 218, where we found policy language similar to that in the instant cases to be unambiguous. We held that the appellant was not entitled to be compensated under his underinsured coverage where appellant's underinsurance and the tortfeasor's liability coverage were in the same amount. A similar result was reached by the Lucas County Court of Appeals in *Buckeye Union Ins. Co.* v. *Wallace* (Mar. 27, 1981), Lucas App. No. L-80-146, unreported, certiorari denied (July 1, 1981), case No. 81-778. Faced with interpretation of similar underinsured motorists coverage language, that court concluded at 5:

"In this case the limits on the tortfeasor's policy were not less than, but equal to, the limits on the appellant's policy. Thus, by a plain reading of the statute, incorporated into the endorsement, the appellant may not recover under the policy for the tortfeasor's underinsurance, because, although the tortfeasor may be underinsured in relation to the appellant's damages, he is not underinsured for the purpose of the statute and policy endorsement. We find the contract clause and statute on this point to be a clear and unambiguous statement of the law."

Nor do we find any ambiguity here in the notice read as a whole (not just the portion cited by appellants) or in the notice read with the amendment and policy.

Questions of law are determined by an examination of the relevant insurance documents, utilizing the familiar rules of construction and interpretation applicable to contracts generally. *Gomolka* v. *State Auto. Mut. Ins. Co.* (1982), 70 Ohio St. 2d 166, 167 [24 O.O.3d 274]. Words and phrases used in an insurance policy must be given their natural and commonly accepted meaning to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined. *Id.* at 167-168. The plain meaning here is that where the victim's damages · exceed the tortfeasor's coverage, the victim's underinsured coverage will pay for the excess damages only to the extent of that (the victim's) underinsurance coverage. Thus, where the negligent party carries liability insurance equal to the amount that the damaged party decided was adequate insurance, the tortfeasor is *not* underinsured.

Applying the well-established principles of construction and interpretation, and not finding any ambiguity, we hold that appellants' assignments of error have no merit.

We affirm.

*Judgments affirmed.*

KRUPANSKY, J., concurs.

PARRINO, P.J., dissents.

PARRINO, P.J., dissenting. I respectfully dissent. Applying the ap-

plicable law to the facts of this case, it is my opinion that both appellants were entitled to relief under their respective policies.

It is clear that when an insurance policy or any of its terms or phrases are ambiguous and subject to different reasonable interpretations, the language must be construed against the insurer and in favor of the insured, to give the insured the greater coverage. *Security Finance Co.* v. *Aetna Ins. Co.* (1971), 26 Ohio St. 2d 135, at 138 [55 O.O.2d 242]; *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [68 O.O.2d 56]; *American Financial Corp.* v. *Fireman's Fund Ins. Co.* (1968), 15 Ohio St. 2d 171, at 173 [44 O.O.2d 147].

A review of the policies indicates that the only definition of underinsured motorist coverage is contained in the "Important Notice" statement upon which each appellant has relied. A reasonable interpretation of this language indicates that the policyholder can make a claim when his/her injuries exceed the limits of the tortfeasor's liability insurance policy.

The conflicting provisions cited by the appellees are ambiguous at best. First, they are set out in a manner that is nearly incomprehensible. Second, once an individual takes the time to decipher these provisions, it is still not clear what they really mean. Never within these provisions is the word underinsured defined. It is conceivable that a person reading the policy (including the "Important Notice" defining underinsured coverage, which was attached to the policy), would believe that he/she would be entitled to uninsured coverage if the tortfeasor had liability insurance which is less than their uninsured coverage, and entitled to underinsured coverage if the tortfeasor's liability coverage is not sufficient to cover injuries. This conclusion is further supported by the fact that an underinsured coverage premium is paid in addition to the uninsured coverage fee.

In light of these facts, I believe that the policies in the instant case are ambiguous, and that the language, when construed in favor of the insured, entitles them to the requested relief. Accordingly, I would reverse in both cases and hold that the appellants are entitled to file claims with the respective insurance companies.

One final note. The majority cites *Hagen* v. *J.C. Penney Cas. Ins. Co.* (1984), 16 Ohio App. 3d 218, and *Buckeye Ins. Co.* v. *Wallace* (Mar. 27, 1981), Lucas App. No. L-80-146, unreported, to support the proposition that the language is unambiguous. In those cases, however, the restriction on underinsured coverage is clearly set forth within an express definition of *under*insured coverage. No such definition exists in the case at bar.