Dr. Robert M. PRESSMAN

v.

AETNA CASUALTY AND SURETY COMPANY.

No. 89–114–A.

Supreme Court of Rhode Island.

May 11, 1990.

Michael Colucci, Olenn & Penza, Warwick, for plaintiff.

Raymond A. Marcaccio, David Whitman, Hanson, Curran, Parks & Whitman, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This matter comes before the Supreme Court on the appeal of the plaintiff, Dr. Robert M. Pressman, from a Superior Court decision granting summary judgment in favor of the defendant, Aetna Casualty and Surety Company (Aetna). The facts relevant to this appeal are as follows.

On September 22, 1986, plaintiff filed a complaint in the District Court, alleging that although he had complied with all the conditions of his insurance policy, Aetna refused to reimburse him for money lost as the result of an interruption of his business due to a power loss.[1] At trial plaintiff, a sole-proprietor clinical psychologist, testified that his office was closed for business from September 27, 1985, to October 2, 1985, because of a power failure that resulted when a tree adjacent to his property fell onto the power line that runs to his building. The plaintiff testified that because of this power outage he was unable to see all his scheduled patients and could not perform computerized diagnostic testing.[2] The plaintiff also testified that after the electrical power was restored, one of his two computers was "down" because a ROM chip was not functioning.[3] In defense, Aetna claimed that coverage had been properly denied in accordance with the policy's exclusionary provisions.

On March 27, 1987, the District Court judge entered judgment in favor of plaintiff in the amount of $1,500 plus interest and costs. On that same day defendant appealed the judgment to the Superior Court. The plaintiff subsequently amended his complaint to include allegations of bad faith on the part of defendant. Thereafter both parties filed motions for summary judgment, and a hearing was held on August 25, 1988.

The dispute before the trial justice focused primarily upon the interpretation of the following exclusion contained in the policy:

"Section I does not apply to loss or damage caused or resulting from the following:

\*     \*     \*     \*     \*     \*

7. Interruption of power or other utility service furnished to the described premises if the interruption takes place *away from the described premises.* If a peril not otherwise excluded results on the described premises, we cover the resulting loss." (Emphasis added.)

In a written decision filed on December 5, 1988, the trial justice granted defendant's motion for summary judgment. Interpreting exclusion 7, the trial justice wrote:

"The term 'premises' is defined in the policy as 'the interior of that portion of any building at the location described in the Declarations which is occupied by you in conducting your business.' Although this definition applies specifically to Part Two entitled 'Business Personal Property,' it is included in the definitional portion of Section I. Analyzing the language in dispute, this court finds that exclusion 7 is clear on its face. When the terms of an insurance policy are found to be clear and unambiguous, the task of judicial construction is at an end; contract terms must then be applied as written and parties are bound by them. *Malo v. Aetna Casualty and Surety Company,* 499 [459] A.2d 954 (R.I.1983). "Based upon the record established in the District Court proceeding, no genuine

---

1. The plaintiff was insured under a Business Owners Policy (Deluxe), which covered loss or damage to his building and business property as well as any loss of earnings that resulted directly from interruption of his business.

2. The plaintiff testified that his minimum hourly fee was $80 and that the diagnostic testing generated between $40 and $55 per test.

3. The plaintiff was qualified as a computer expert prior to testifying to this fact.

issue of material fact exists. It is uncontradicted that the loss of power occurred when a tree collapsed on land adjacent to the property of the insured, severing the power line. As a result, there is no question that the interruption of power took place 'away from the described premises.' * * *

"This court finds that exclusion 7 also precludes coverage for loss of earnings and interruption of business related to the damaged computer. The plaintiff testified that the computer was operating properly on the day preceding the storm. When power was restored, however, it was discovered the computer was incapable of functioning. It is evident from the record that the damage to the computer occurred due to the power loss during the hurricane. Accordingly, the policy exclusion for interruption of power applies.

"In addition to the plaintiff's original claims seeking recovery under the policy, he has amended his complaint to include two counts of bad faith on the part of the defendant. Under *Bibeault v. Hanover Insurance Company*, 417 A.2d 313 (R.I. 1980), a plaintiff must show the absence of a reasonable basis for denying benefits of a policy. This bad faith allegation cannot be maintained, because no evidence has been established to support the proposition that the defendant unreasonably refused coverage or acted with reckless disregard as to the validity of the claim."

■ The foregoing language makes it apparent that in construing the phrase "away from the described premises," the trial justice relied upon a definition of the term "premises" applicable to a different section of the insurance policy. We believe that his reliance was misplaced.

The trial justice relied upon a definition of the term "premises" included in a section entitled "Definitions Applicable to Money and Securities Coverage under Part Two—Business Personal Property." Although the term "premises" appears several times in different sections of the policy, it is not otherwise defined. We do not believe that the absence of an additional generally applicable definition was due to an oversight by the drafter of the policy; rather we believe that the stated definition was intended to distinguish the term "premises" as used in part 2 of the policy from the term "premises" as used in the rest of the policy. This conclusion is buttressed by certain language contained in part 1 of the policy. Part 1 states, in part, "When the Declarations indicate coverage for Buildings, we cover the following: The building *at the premises* described in the Declarations." (Emphasis added.) The use of the phrase "at the premises" in this context necessarily implies that the term "premises" includes more than merely the interior of the building.

Furthermore we believe that it is against public policy to apply such a narrow definition of the term "premises" to the facts of this case because an application of this definition renders the power-interruption coverage illusory. As the trial justice noted, the policy defines the term "premises" as "the interior of that portion of any building at the location described in the Declarations which is occupied by you in conducting your business." If one applies this definition to exclusion 7, the exclusion reads as follows: Section I does not apply to loss or damage caused or resulting from the following: Interruption of power or other utility service furnished to the interior of the building if the interruption takes place away from the interior of the building. In effect this exclusion would preclude coverage in almost any circumstance unless the insured had his own generator located inside the building. We believe this result is unconscionable.

■ We are therefore left with the task of interpreting the obviously ambiguous phrase "away from the described premises." The law is well settled in this jurisdiction that in situations in which the language of an insurance policy is susceptible to more than one reasonable interpretation, it is strictly construed against the insurer. *Mullins v. Federal Dairy Co.*, 568 A.2d 759, 762 (R.I.1990); *Goucher v. John Hancock Mutual Life Insurance Co.*, 113 R.I.

672, 681, 324 A.2d 657, 662 (1974). The terms should be given their plain, ordinary, and usual meaning. If there remains any doubt, the terms should be read in the same sense that the insurer had reason to believe would be the way they would be interpreted by the ordinary reader and purchaser. "The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." *Elliott Leases Cars, Inc. v. Quigley,* 118 R.I. 321, 326, 373 A.2d 810, 812 (1977).

The plaintiff testified that the power loss occurred when a tree adjacent to his property split in half and fell onto the power line that went directly to his condominium. Given the ambiguous nature of exclusion 7, we cannot say that it was unreasonable for plaintiff to have believed that his loss would be covered in these circumstances.

■ Nonetheless, we do not believe that the defendant's conduct amounted to bad faith. The ambiguous nature of exclusion 7 gave the defendant a reasonable basis for denying coverage under the policy. "If a claim is 'fairly debatable,' no liability in tort will arise." *Bibeault v. Hanover Insurance Co.,* 417 A.2d 313, 319 (R.I.1980).

For the foregoing reasons the appeal of the plaintiff is sustained, the judgment appealed from is vacated, and the papers of this case are remanded to the Superior Court for a trial on the merits.[4]

---

**4.** Because we have determined that exclusion 7 is inapplicable, we need not address the issue of the damaged computer. Lost earnings attribut- able to plaintiff's inability to use the computer fall within the power-interruption coverage, and therefore, we need not treat them separately.