**MAPLETOWN FOODS, INC. et al., Appellants,**

**v.**

**MOTORISTS MUTUAL INSURANCE COMPANY, Appellee.**

[Cite as *Mapletown Foods, Inc. v. Motorists Mut. Ins. Co.* (1995), 104 Ohio App.3d 345.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68158.

Decided June 5, 1995.

*Robert P. Rutter*, for appellants.

*Gallagher, Sharp, Fulton & Norman, Thomas E. Dover* and *Thomas J. Kaiser*, for appellee.

*Per Curiam.*

This appeal is before the court on the accelerated docket pursuant to App.R. 11.1 and Loc.App.R. 25.

Plaintiffs-appellants Mapletown Foods and Noble Bi–Rite appeal from a declaratory judgment entered in favor of defendant-appellee Motorists Mutual Insurance Company on plaintiffs' claim that a general power outage causing food spoilage at their grocery stores was covered under the Motorists policy. We find no error and affirm the judgment below.

On July 28, 1993, high winds and severe storms struck the northeast Ohio area, resulting in power outages and food spoilage at the two plaintiffs' grocery stores. The cause of the outage was a downed wire away from their premises.

The plaintiffs had "Business Owners' Special Property Coverage" under their policies with Motorists. One of the plaintiffs, Noble Bi–Rite, had also purchased a special spoilage coverage endorsement with limits of $15,000. The other plaintiff, Mapletown Foods, had declined such coverage.

The business owners' special property coverage form contained the following exclusions:

"B.   EXCLUSIONS

"1.   We will not pay for loss or damage caused directly or indirectly by any of the following.   Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

"\* \* \* \*

"e.   Power Failure

"The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

"But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage."

Noble Bi–Rite, which had the spoilage coverage, received the $15,000 limits, but seeks to recover more under the general policy quoted above.   Mapletown Foods, which did not buy the special spoilage coverage, seeks to recover its spoilage losses despite the above-quoted exclusion.

The plaintiffs' sole assignment of error is that "the trial court erred in determining that a layperson would clearly understand that the policy did not cover this loss."   They argue that the exclusionary language is ambiguous and must be construed in favor of the insured.

It is true that where language in an insurance policy is reasonably susceptible of more than one meaning, it will be construed liberally in favor of the insured and strictly against the insurer.   *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 168, 24 O.O.3d 274, 276, 436 N.E.2d 1347, 1348–1349.   However, a "court will not employ a liberal construction of a contract of insurance in the absence of any ambiguity in its language."   *State Farm Auto. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 532, 575 N.E.2d 459, 461.   The fundamental rules of construction to be applied were stated in *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 89:

"The fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect.   ' "The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." '   *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 167, 10 OBR 497, 500, 462 N.E.2d 403, 406, quoting *German Fire Ins. Co. v. Roost* (1897), 55 Ohio St. 581, 45 N.E. 1097, paragraph one of the syllabus \* \* \*.

"The words in a policy must be given their plain and ordinary meaning, and only where a contract of insurance is ambiguous and therefore susceptible to

more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage. [Citations omitted.] Nevertheless, it is axiomatic that the general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Karabin, supra,* at 166–167, [10 OBR at 499–500], 462 N.E.2d at 406."

There is another rule of contract interpretation that bears on our review of the policy, which is a contract between the insurer and insured. As stated in *Ford Motor Co. v. John L. Frazier & Sons Co.* (1964), 8 Ohio App.2d 158, 161, 29 O.O.2d 379, 381, 196 N.E.2d 335, 337:

" 'In construing a written instrument, effect should be given to all of its words if this can be done by any reasonable interpretation; and it is the duty of a court to give effect to all parts of a written contract, if this can be done consistently with the expressed intent of the parties. If possible, every provision in a contract should be held to have been inserted for some purpose and to perform some office, and an attempt must be made to harmonize, if possible, all the provisions of a contract. * * *' " 11 Ohio Jurisprudence 2d 399, Contracts, Section 155."

The same principles apply in construing the language of insurance policies. 57 Ohio Jurisprudence 3d (1985) 339–341, Insurance, Section 279, 280. Phrases in an insurance policy are to be given their true meaning, so that a reasonable interpretation consistent with the intent of the parties can be determined. *Ohio Cas. Ins. Co. v. Yoby* (1985), 23 Ohio App.3d 51, 55, 23 OBR 96, 99–100, 491 N.E.2d 360, 364.

The trial court entered declaratory judgment in favor of Motorists, finding no ambiguity in the policy language and no coverage, stating as follows:

"The phrase 'away from the premises' does have a plain, ordinary meaning: not on the premises that are described in the contract of the insured. Therefore, construction of that language is not available. In addition, the clause providing coverage for damage 'caused by or resulting from any covered cause of loss' plainly refers to the damage produced by a covered cause. It would be illogical to presume the contract included coverage for any loss when a covered cause of loss is involved, no matter how obscure the connection to the actual loss. The losses to plaintiffs resulted directly from the power outages. The power outages were caused by tripped breakers at the stores' respective substations. Thus, the power loss occurred unquestionably away from the stores' premises, and was not caused by a covered cause of loss.

"In further support of defendant's contention that the language of the contract was clear, defendant submits that, in 1988, they made available to each plaintiff "spoilage coverage" to explicitly cover their perishable stock. In fact, plaintiff Noble purchased $15,000 spoilage coverage and has collected the limits of the

policy. Plaintiff Mapletown chose not to purchase such coverage. Plaintiff should not be permitted to allege the contract was ambiguous to enable them to collect on their Business Owners' Special Property Coverage when they were aware separate spoilage coverage was available."

The parties concede that there is no Ohio precedent squarely on point and the interpretation of the exclusionary phrase "away from the premises" appears to be one of first impression. Plaintiffs, however, call attention to the only two cases found in other jurisdictions that offer support for their position that "away from the premises" is ambiguous: *Pressman v. Aetna Cas. & Sur. Co.* (R.I.1990), 574 A.2d 757, and *Brooklyn Bridge v. S. Carolina Ins.* (App.1992), 309 S.C. 141, 420 S.E.2d 511. The Rhode Island case is distinguishable because the court found that the trial court had given a restrictive meaning to "premises" (*i.e.,* within the interior of the building) and the power failure at issue in that case occurred when a tree adjacent to plaintiff's property fell onto the power line leading to his condominium. Thus, the cause did not occur "away from the premises."

The South Carolina case is not factually distinguishable, but we believe it was wrongly decided because the construction given by the court gave no effect to the language "away from the premises." In other words, despite the obligation to find meaning in every word used, the *Brooklyn Bridge* decision leaves no meaning to the words "away from the premises."

The same problem exists here. If the power failure in instant case does not fall within the meaning of a power failure "away from the premises" then the phrase is bereft of meaning. Significantly, plaintiff's able counsel at oral argument was unable to suggest any circumstance in which the insured could not recover for a power failure. We must give meaning to the exclusion if we reasonably can. Its ordinary meaning is that there is no coverage when the power failure occurs away from the premises, *i.e.,* at the utility's power station or somewhere off the plaintiff's premises. That is a reasonable construction and the one applicable to the instant case.

For the reasons hereinbefore given, we concur in the trial court's analysis and construction of the policy exclusions. We find no ambiguity in the exclusionary language "if the [power] failure occurs away from the premises" and reject the strained construction plaintiffs offer for the exclusionary provisions.

Plaintiffs' assignment of error is overruled.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., PATRICIA A. BLACKMON and PORTER, JJ., concur.