VICKIE J. SPULAK, NOW KNOWN AS VICKIE J. MAW, DOING
BUSINESS AS BROADWAY CAFE & LOUNGE, APPELLANT, V.
TOWER INSURANCE COMPANY, INC.,
A WISCONSIN CORPORATION, APPELLEE.

601 N.W. 2d 720

Filed October 22, 1999. No. S-98-513.

Daniel R. Fridrich and Denzel R. Busick, of Luebs, Leininger, Smith, Busick, Johnson, Baack, Placzek & Steele, for appellant.

Anne K. Burnett, Betty L. Egan, and J. Joseph McQuillan, of Walentine, O'Toole, McQuillan & Gordon, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Vickie J. Spulak, now known as Vickie J. Maw (Maw), doing business as Broadway Cafe & Lounge (Cafe & Lounge), sued Tower Insurance Company, Inc. (Tower), for breach of an insurance contract. Maw alleged that Tower breached the contract by refusing to pay for damages arising out of a fire that occurred at the Cafe & Lounge on January 16, 1991. Tower alleged that the fire was intentionally set by Maw's ex-husband, Frank Spulak (Spulak), and that Spulak was Maw's partner or agent in the operation of the business or a person to whom the property was

entrusted. After trial, the jury returned a verdict generally in favor of Tower and against Maw.

## SCOPE OF REVIEW

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Hittle, ante* p. 344, 598 N.W.2d 20 (1999).

## FACTS

From the fall or early winter of 1989 until January 1991, Maw and Spulak operated the Cafe & Lounge in Fullerton, Nebraska. During that time, Maw and Tower entered into a multiperil insurance contract that covered the Cafe & Lounge against loss by fire. On January 16, 1991, a fire occurred at the Cafe & Lounge and caused extensive damage to the property.

Maw filed a proof of loss with Tower and made a claim for damages. Tower denied the claim on various grounds, including that (1) Tower believed Spulak intentionally set fire to the building and (2) because Spulak was a partner or agent in the business or one to whom the insured property was entrusted, coverage was excluded under the terms of the policy. In response, Maw alleged that the policy contained exclusions that were not permitted by law.

The cause was tried to a jury in September 1994, and the jury returned a verdict in favor of Tower. Maw appealed, arguing that the district court erred when it failed to sustain a demurrer ore tenus made by Maw on the first day of trial. The basis for the demurrer was that the policy exclusion relied upon by Tower as an affirmative defense was not valid because it did not conform to the 1943 Standard Fire Insurance Policy of the State of New York (1943 New York fire policy) or was not otherwise approved by the director of the Nebraska Department of Insurance. We reversed the judgment because there was no evidence that the policy provision in question had been approved by the Director of Insurance and thus the demurrer ore tenus should have been sustained. See *Spulak v. Tower Ins. Co.*, 251 Neb. 784, 559 N.W.2d 197 (1997).

On remand, both Maw and Tower moved for summary judgment on the issue of whether the Director of Insurance had approved the exclusion relied upon by Tower. The district court overruled Maw's motion and sustained Tower's motion for summary judgment.

The exclusion language in question, which the district court referred to as "form CP 10 30 07 88," provides at exclusion B(2):

We will not pay for loss or damage caused by or resulting from any of the following:

. . . .

h. Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

The district court found that on July 14, 1988, the Director of Insurance approved the language of form CP 10 30 07 88; that this language was in effect for policies issued on or after November 1, 1988; and that Insurance Services Office, Inc. (ISO), was authorized to file the amendment to the policy on behalf of Tower.

The district court determined there were no genuine issues of material fact with respect to approval of the policy language in question and that such language was applicable to the parties. Thus, the district court overruled Maw's motion for summary judgment, sustained Tower's motion for summary judgment in part in accordance with the above findings, and overruled Maw's demurrer ore tenus.

On September 29, 1997, Maw filed a second motion for summary judgment, claiming the insurance contract was ambiguous. The district court overruled Maw's motion, concluding that there were no inconsistent exclusions within the language of the policy and that the policy was not ambiguous. At trial, Maw's motion for a directed verdict was overruled, the matter was

submitted, and the jury entered a verdict in favor of Tower on February 18, 1998. Maw filed a motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial, which was also overruled, and Maw timely appealed.

## ASSIGNMENTS OF ERROR

Maw asserts that the district court erred in (1) sustaining Tower's motion for summary judgment and overruling her motion for summary judgment by holding that the B(2)(h) exclusion in Tower's fire insurance policy, form CP 10 30 07 88, had lawfully been approved by the Director of Insurance; (2) overruling Maw's motion for summary judgment asking the court to find that Tower's insurance policy was ambiguous; (3) sustaining Tower's oral motion in limine, which prevented Maw's counsel from commenting in closing arguments about an applicable exclusion in Tower's insurance policy; (4) failing to instruct the jury that it could find that Spulak was an employee of the Cafe & Lounge; (5) overruling Maw's motion for directed verdict made at the close of Tower's case in chief and renewed at the close of Maw's rebuttal evidence; and (6) overruling Maw's motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial.

## ANALYSIS

We first address Maw's claim that the district court erred in finding that the exclusion in Tower's policy, form CP 10 30 07 88, had lawfully been approved by the Director of Insurance. This issue presents a question of law. On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Hittle, ante* p. 344, 598 N.W.2d 20 (1999).

In summary, Maw's position is that (1) the Director of Insurance had no statutory authority to approve the exclusion on July 14, 1988, and (2) ISO, which filed the form on behalf of Tower, was not statutorily authorized to do so. Tower argues that Maw failed to raise this defense in her pleadings and that therefore we should not address this issue.

■ Generally, exclusions in insurance policies are treated as affirmative defenses and therefore must be specifically pled.

*Kansas-Nebraska Nat. Gas Co., Inc. v. Hawkeye-Security Ins. Co.*, 195 Neb. 658, 240 N.W.2d 28 (1976). In *Spulak v. Tower Ins. Co.*, 251 Neb. 784, 559 N.W.2d 197 (1997), we stated that the insurer bears the burden of establishing as an affirmative defense that an event falls within an exclusionary clause. When Maw asserted that the exclusion in form CP 10 30 07 88 failed to comply with Neb. Rev. Stat. § 44-501 (Reissue 1998), Tower had the burden to establish that the exclusion in form CP 10 30 07 88 was approved by the Director of Insurance. *Spulak, supra.* Maw's reply, which denied Tower's allegation that the exclusion had been approved, placed the matter at issue, and therefore, the matter is properly before us.

Section 44-501(11) provides: "The Director of Insurance may approve any form of policy with variations in terms and conditions from the standard policy provided for in this section." Maw asserts that the district court erred in relying upon § 44-501(11) because § 44-501(11), which became effective August 25, 1989, did not apply retroactively and that therefore the Director of Insurance did not have statutory authority to approve the exclusion on July 14, 1988.

■ The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independent of the determination made by the lower court. *Allied Mut. Ins. Co. v. Action Elec. Co.*, 256 Neb. 691, 593 N.W.2d 275 (1999). The district court erred in concluding that the Director of Insurance had statutory authority to approve the provisions of form CP 10 30 07 88. Section 44-501(11) was not in effect at the time the Director of Insurance purported to approve the amendment to the policy in 1988, and we decline to hold that the director's purported approval in 1988 became valid when § 44-501(11) went into effect on August 25, 1989.

Tower argues that § 44-501(6) (Reissue 1988) was the fundamental equivalent of § 44-501(11) because the Director of Insurance could approve changes in the policy under this section. Maw asserts that § 44-501(6) did not give the Director of Insurance authority to approve insurance policies and forms on July 14, 1988. Maw contends that § 44-501(6) did not allow the Director of Insurance to approve forms which varied from the

terms of the 1943 New York fire policy because the director was allowed to approve forms that had " 'an unspecified basis as to coverage' " or provided " 'for an indivisible premium' " only. Brief for appellant at 21. Maw claims that since the exclusion was more restrictive of coverage, it did not meet the requirement of § 44-501(6) that the policy be the substantial equivalent of the minimum provisions of the 1943 New York fire policy.

The applicable version of § 44-501(6) provided:

> The Director of Insurance may approve any form of policy which includes . . . coverage against the peril of fire and substantial coverage against other perils, without complying with the provisions of this section; *Provided,* such policy with respect to the peril of fire includes provisions which are the substantial equivalent of the minimum provisions of the standard policy herein provided for; *and provided further,* the policy is complete as to all its terms without reference to any other document.

In relying upon § 44-501(6), the district court concluded that the Director of Insurance had authority prior to 1989 to approve such policy variations.

■ In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Allied Mut. Ins. Co. v. Action Elec. Co., supra.* Section 44-501(6) permitted the Director of Insurance to approve those policies which were the "substantial equivalent of the minimum provisions of the standard policy [1943 New York fire policy]."

Prior to the adoption of form CP 10 30 07 88, the existing 1943 New York fire policy stated as to exclusions: "[T]his Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured . . . ." In *Keene Coop. Grain & Supply Co. v. Farmers Union Ind. Mut. Ins. Co.,* 177 Neb. 287, 294, 128 N.W.2d 773, 779 (1964), we stated that "[a] provision in a fire insurance policy against an increase in hazard is generally considered to relate to a change in the use of the property and not to prohibit the making of necessary repairs to the property." The exclusion relied upon by the insurance company was the same

as the one found in the 1943 New York fire policy. In *Keene Coop. Grain & Supply Co.*, we considered whether the plaintiff increased the risk in violation of the policy by making repairs to a grain storage tank.

In *Webster Enterprises, Inc. v. Selective Insurance Co.*, 125 N.C. App. 36, 479 S.E.2d 243 (1997), the defendant insurance company relied upon this precise exclusion in an attempt to deny coverage to the plaintiff. In determining whether the exclusion was applicable, the court noted that the phrase "increase of hazard," with respect to the fire insurer's coverage defense, denoted a change in circumstances existing at the inception of the policy. More specifically, it encompassed only new uses which would increase a risk or hazard insured against, and not a continuation of former or customary use or change in risk without increase of hazard. It contemplated an alteration which would materially and substantially enhance the hazard.

In *Majtan v. Madison Mut. Ins. Co.*, 249 A.D.2d 867, 672 N.Y.S.2d 458, 459 (1998), while interpreting the same policy exclusion, the court stated: "An increase in the hazard insured against 'takes place when a new use is made of the property, or when its physical condition is changed from that which existed when the policy was written, and the new use or changed condition increases the risk assumed by the company.' " The court found that abandonment and disrepair were factors which could increase the hazard.

Thus, in *Keene Coop. Grain & Supply Co.*, we interpreted the provision " 'while the hazard is increased by any means within the control or knowledge of the insured' " to relate to a change in the use of the property. *Id.* at 294, 128 N.W.2d at 779. Such interpretation is in accord with other jurisdictions which have considered this provision of the 1943 New York fire policy relating to the phrase "hazard is increased."

When form CP 10 30 07 88 was added to the policy, it created an exclusion to coverage based upon dishonest or criminal acts by the insured or any of the insured's partners, employees, directors, trustees, authorized representatives, or anyone to whom the insured had entrusted the property for any purpose. As we interpret the policy independently from the determination of the district court, this exclusion had the effect of reducing the

fire insurance coverage under the terms of the 1943 New York fire policy. Therefore, since the exclusion had the effect of reducing the coverage, the exclusion was not the substantial equivalent of the minimum provisions of the 1943 New York fire policy and the Director of Insurance could not approve the change in the policy under § 44-501(6).

## CONCLUSION

We conclude as a matter of law that the policy exclusion relied upon by Tower was not legally approved by the Director of Insurance and that form CP 10 30 07 88 is not applicable to the policy in question. Since we reverse the judgment and remand the cause for a new trial, it is not necessary to address Maw's other assignments of error.

REVERSED AND REMANDED FOR A NEW TRIAL.