MARK GIES AND SUE GIES, DOING BUSINESS AS TWIN CITY PACKING, ALSO KNOWN AS TWIN CITY PACK, APPELLEES AND CROSS-APPELLANTS, V. CITY OF GERING, A MUNICIPAL CORPORATION, APPELLEE, UNION INSURANCE CO., A DIVISION OF CONTINENTAL WESTERN GROUP, A NEBRASKA AUTHORIZED INSURANCE COMPANY DOING BUSINESS IN NEBRASKA, APPELLANT AND CROSS-APPELLEE, AND SCOTT KERBEL, DOING BUSINESS AS ARCTIC AIR REFRIGERATION, APPELLEE.

695 N.W.2d 180

Filed March 22, 2005. No. A-03-1112.

John F. Simmons and Steven W. Olsen, of Simmons Olsen Law Firm, P.C., for appellant.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellees Mark Gies and Sue Gies.

CARLSON, MOORE, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

This appeal arises out of the claim submitted by Mark Gies and Sue Gies, doing business as Twin City Packing, also known as Twin City Pack, (collectively TCP) against its insurer, Union

Insurance Co. (Union), for a loss under a policy it entered into with Union. Union appeals the judgment and the award of attorney fees and costs entered against it in favor of TCP, alleging that an exclusion under the insurance policy applied. TCP cross-appeals, alleging that the judgment was insufficient, that the court erred in allowing evidence concerning an affirmative defense not asserted in the pleadings, and that the court abused its discretion in allowing Union, following trial, to amend its answer to assert the defense of an exclusionary clause. For the reasons discussed herein, we reverse, and remand with directions.

## BACKGROUND

Twin City Packing is a meatpacking business located in Gering, Nebraska. The business has two large coolers connected to the same 10-horsepower compressor, a blast freezer linked to a different 10-horsepower compressor, and a holding freezer refrigerated by a 3-horsepower compressor. The compressors operate on electricity provided by the City of Gering.

On the evening of January 23, 1999, an electrical power outage occurred in a section of Gering that included the business' location. A broken aluminum jumper cable caused the outage, which cable was connected to an air break switch located atop two utility poles at a transformer substation situated several blocks away from the meatpacking business property.

The business' compressors used three-phase electrical motors, and the aforementioned substation provided three-phase power. The broken jumper cable "knocked out" one phase of that three-phase power, which occurrence is referred to as a "single-phase disturbance." Although the compressors lost one phase of power, they continued to run until their motors eventually overheated and were damaged.

Mark Gies arrived at the meatpacking business on the morning of January 24, 1999, and discovered that neither of the 10-horsepower compressors was running and that they had been off for "quite a while" because they were both cold to the touch. When Mark Gies could not get these compressors to operate, he called Scott Kerbel, who owned and operated Arctic Air Refrigeration. Kerbel determined that the 10-horsepower compressor refrigerating the freezer was ruined and that the other

10-horsepower compressor had sustained damage. Kerbel temporarily replaced the ruined compressor with a 7½-horsepower compressor. The meat did not sustain any spoilage, and the business did not have to discard any meat.

TCP submitted a written "Loss Notice" form to the City of Gering alleging damages of $18,500 "or a little higher" due to the loss of a 10-horsepower compressor caused by an "electrical power outage." The City of Gering denied the claim because the jumper cable "broke due to conditions beyond the control of the City of Gering." At the time of the power outage, TCP was insured by Union pursuant to a "Commercial Lines Policy." That policy states in pertinent part:

> **B. Exclusions**
>
> **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> . . . .
>
> **e. Power Failure**
>
> The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.
>
> But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

TCP submitted a claim to Union, and Union denied the claim on April 18, 2000, stating that the policy "does not provide coverage for a power surge or lack of power, such as the repairman is saying happened to your compressors, as he is saying that you lost one phase of the three phase system." Union enclosed a copy of some pages from the policy and stated that it had highlighted the exclusion that pertained to the situation. Union highlighted section B.1.e., a portion of that which we quoted above.

TCP filed its operative petition on February 13, 2002. It alleged that "an electrical outage at the transformer substation, located near [the meatpacking business], occurred . . . which outage proximately caused damage to [the business'] equipment, including compressors, a cooler and a freezer." The petition set forth seven causes of action: five against the City of Gering and one each

against Union and Kerbel. Because neither the City of Gering nor Kerbel has filed an appeal in this matter, we will largely omit discussion of allegations and evidence relating solely to those parties.

Union filed an answer to that petition on April 8, 2002, admitting that the outage proximately caused the damage to the meatpacking business. Union denied that paragraph of the petition which stated that the meatpacking business incurred damages "when the compressors lost one phase of the three phase system, which did not give the compressors enough power to start; with the units trying to start, they eventually burned out and required complete repair." The answer further stated, "As to [the petition's] paragraphs [addressing electrical apparatus and insurance coverage therefor, Union] denies the allegations of that paragraph as it claims that coverage is not afforded under that policy." Union then alleged (1) that TCP did not have legal capacity for its claims and suit against Union; (2) that TCP failed to state a cause of action; (3) that the power outage was caused by an act of God; (4) that by TCP's failure to have appropriate safety devices to prevent the damage alleged, TCP was contributorily negligent to a degree sufficient to bar recovery; and (5) that "the policy of insurance issued to [TCP] specifically precludes recovery based upon the facts of this case." Union filed an amended answer on January 21, 2003, admitting that the electrical outage took place at the transformer substation of the City of Gering and alleging that Union had insufficient information to either admit or deny allegations pertinent to the City of Gering.

The court held a bench trial on January 21 to 23 and March 27, 2003. The court overruled Union's motions for directed verdict, one made at the end of TCP's evidence and another made at the end of all evidence. Following the evidentiary portion of the trial, Union moved for leave to file an amended answer and orally represented that the only change would be to

> allege with the specific terminology from the policy the exclusionary language which would deal with power failure, and which also would deal with electrical apparatus and the — all I'm proposing is that a paragraph be added indicating that . . . Union . . . alleges that the claim of [TCP] is excluded from coverage under the relevant insurance policy by virtue of certain exclusions, including the

following, and then it would go on to specifically include those two exclusions.

The court filed its order on July 11, 2003. The section entitled "Pleadings" stated in part: "[Union's] motion at the conclusion of evidence for leave to file a Third Amended Answer to [TCP's] Second Amended Petition is sustained, EXCEPT that paragraph [addressing electrical apparatus] of the Third Amended Answer shall not be allowed. The proffered amended answer attached to Union's motion shall be deemed filed."

The order stated that an "electrical power outage" was the precipitating incident. With respect to the action against Union, the court found that the damaged compressors constituted "Covered Property" under the policy. It stated that if section B.1.e. included only the first sentence, there would clearly be no coverage for TCP's claim under the policy. However, the court took issue with the second sentence of section B.1.e., which sentence the court paraphrased and interpreted to read: "If the power failure result[ed] in a risk of direct physical damage to covered property, then Union . . . would pay for that damage." The court continued, "Stated differently, there would be coverage under the second sentence of paragraph B.1.e. if the power failure caused a risk of direct physical damage to covered property." The court observed that the second sentence referred only to a " 'failure of power' " and not a " 'failure of power . . . occurring away from the premises.' " But the court then stated, "Reading both sentences together there would be coverage unless it is excluded, but it would not be excluded if there was coverage." The court concluded that section B.1.e. of the Union policy was ambiguous and should be read as to provide coverage. The trial court determined that coverage existed and entered judgment against Union for $8,250, but noted the existence of a $250 deductible. The court therefore entered a final judgment in favor of TCP for $8,000.

Following a hearing, the court awarded attorney fees and costs in favor of TCP and against Union. The court concluded that the fair and reasonable amount of legal services rendered to TCP solely for its cause of action against Union was $4,500 for pretrial motions and preparation, and $2,500 from January 21, 2003, until the date of the order. The court further concluded that the fair and reasonable amount of costs to be assessed against Union would be

one-third of $3,389.19, or $1,129.73. The court entered a judgment for attorney fees and costs in the total amount of $8,129.73.

## ASSIGNMENTS OF ERROR

Union alleges that the trial court erred (1) in concluding that TCP's loss was covered and thus entering judgment against Union and (2) in assessing attorney fees and costs against Union.

On cross-appeal, TCP alleges that the trial court erred (1) in permitting testimony, argument, or evidence concerning an affirmative defense not asserted in the pleadings; (2) in allowing Union to amend its answer and assert the defense of an exclusionary clause under the policy to deny recovery; and (3) in awarding an insufficient amount of damages.

## STANDARD OF REVIEW

The meaning of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. 528, 684 N.W.2d 571 (2004). In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved. *Id.* In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. *Id.*

## ANALYSIS

*Permitting Evidence and Amendment of Answer*
*Relating to Affirmative Defense.*

Before reaching Union's assigned errors, we think it is logical to first address issues raised on cross-appeal. TCP argues that because Union failed to assert the power failure defense in its pleadings, the court erred in allowing testimony, evidence, and argument on the matter and in permitting Union, at the conclusion of the trial, to amend its answer to specifically allege the policy exclusion for power failure.

In our review of the record, we find it abundantly clear that Union was asserting the policy exclusion for power failure as a

defense. Union's April 18, 2000, letter denying coverage stated that the policy did not "provide coverage for a power surge or lack of power," and Union enclosed and highlighted section B.1.e. of the policy, the section excluding coverage for power failure. TCP's petition alleged that an "electrical outage" proximately caused the damage, and Union's initial answer to this petition stated that Union "claims that coverage is not afforded under that policy" and alleged that "the policy of insurance issued to [TCP] specifically precludes recovery based upon the facts of this case."

The procedural requirement then in effect, Neb. Rev. Stat. § 25-811 (Reissue 1995) (now found at Neb. Ct. R. of Pldg. in Civ. Actions 8 (rev. 2003)), stated: "The answer shall contain (1) a general or specific denial of each material allegation of the petition controverted by the defendant; and (2) a statement of any new matter constituting a defense, counterclaim or setoff, in ordinary and concise language, and without repetition." Generally, exclusions in insurance policies are treated as affirmative defenses and therefore must be specifically pled. *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999). The use of specific language asserting defenses is not required, nor is it necessary to state a defense in any particular form, as long as the facts supporting the assertion are stated and sufficient facts are pled to constitute the raising of the alleged defense. *Diefenbaugh v. Rachow*, 244 Neb. 631, 508 N.W.2d 575 (1993). Under the facts of the instant case, Union's answer sufficiently put TCP on notice Union was claiming that coverage was not allowed under the policy and that the policy specifically precluded recovery based upon the facts of the case.

The bill of exceptions from the January 3, 2002, hearing on certain motions, including Union's first motion for summary judgment, shows that counsel for Union discussed power failure and the power failure exclusion. The court's order denying the motion quoted the insurance policy's exclusion for power failure, section B.1.e. TCP cannot seriously contend that it was somehow prejudiced or surprised by the "power failure defense," and TCP's argument that the court erred in failing to sustain objections at trial to "the introduction of 'power failure' terminology or application," brief for appellee TCP on cross-appeal at 47, is without merit.

TCP also alleges on cross-appeal that the court erred in allowing Union to amend its answer to specifically set forth the power failure exclusion. On March 27, 2003, Union filed a motion to amend its answer "to include more specifically the affirmative defenses which involve the exclusions that are relevant in this case and which have been at issue throughout the case and during trial." Union attached a proposed third amended answer which added the following: "21. [Union] alleges that the claim of [TCP] is excluded from coverage under the relevant insurance policy by virtue of certain exclusions including the following." The proposed answer then set forth the portions of the policy addressing exclusions based upon power failure and electrical apparatus. In a July 11 order, the court allowed Union to plead the power failure exclusion and stated that the answer attached to the motion to amend was "deemed filed."

■ Neb. Rev. Stat. § 25-852 (Reissue 1995) (repealed by 2002 Neb. Laws, L.B. 876) stated: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, permit a party upon motion to amend any pleading, process, or proceeding by . . . inserting other allegations material to the case . . . ." The statute is to be liberally construed so as to prevent a failure of justice. *State v. Silvers*, 260 Neb. 831, 620 N.W.2d 73 (2000). The decision to grant or deny an amendment to a pleading rests in the discretion of the court. *Id.* Amended and supplemental pleadings are now governed by Neb. Ct. R. of Pldg. in Civ. Actions 15 (rev. 2003). Rule 15(b) states:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission

of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

As discussed above, Union's proposed amendment to specifically allege the power failure exclusion would not change the defense in any way and it would conform to the evidence presented at trial. It is evident that TCP has known throughout the proceedings that Union was denying coverage based upon the power failure exclusion. Had Union's prior answers specifically set forth the policy's power failure exclusionary language, we cannot imagine how TCP would have approached matters differently. The court did not abuse its discretion in allowing Union to amend its answer to specifically allege the power failure exclusion.

Although TCP appears to argue in its brief that the direct cause of damage was not a power failure, but, rather, "the overheating of the motors from trying to restart," brief for appellee TCP at 30, we do not reach this issue because the trial court determined that a power failure occurred and because TCP did not assign such finding as an error on cross-appeal. See, e.g., *McDonald v. DeCamp Legal Servs.*, 260 Neb. 729, 619 N.W.2d 583 (2000) (appellee may not raise arguments independent of or not responsive to appellant's assignments of error without cross-appealing; appellee's argument that lower court's decision should be upheld on grounds specifically rejected below constitutes request for affirmative relief, and appellee must cross-appeal for that argument to be considered).

*Whether Language of Exclusion Was Ambiguous.*

In determining that Union's policy covered TCP's loss, the trial court found section B.1.e. to be ambiguous. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004). The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. *Id.* While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. *Id.* A contract, such as an insurance policy, is

ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* A policy will not be considered ambiguous merely because a word or phrase, isolated from its context, is susceptible to more than one meaning. *Id.* Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses. *Id.*

Given our standard of review, we must independently review the insurance contract and make our own determination as to whether the policy was ambiguous. There is no dispute that the damaged compressors fall within "covered property" as defined in the policy and that the damage was a direct physical loss, but Union argues that the policy clearly excluded losses caused by power failure. The significant portion of section A of the policy is as follows: "**3. Covered Causes Of Loss**[:] Risks of Direct Physical Loss unless the loss is: **a.** Excluded in Section **B.**, Exclusions; or **b.** Limited in Paragraph **A.4.**, Limitations; that follow." Union admits in its brief, and we agree, that the limitations in paragraph A.4. are not applicable.

Exclusions are set forth in section B of the policy, which section states in pertinent part:

> **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> . . . .
>
> **e. Power Failure**
>
> The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.
>
> But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

With regard to the sentences under section B.1.e., the trial court stated in its order, "Reading both sentences together there would be coverage unless it is excluded, but it would not be excluded if there was coverage." Union argues that such an interpretation "completely nullifies the first clause, leaving the whole section utterly meaningless." Brief for appellant at 16.

[I]n construing a contract, the court must give meaning to all of its parts, and any interpretation which renders meaningless any part of the contract must be avoided. The reason is self-evident: If a particular construction renders part of a contract meaningless, it is indicative that the construction is not in accord with the parties' intentions.

*Westbrook v. Masonic Manor*, 185 Neb. 660, 665, 178 N.W.2d 280, 283 (1970) (White, C.J., dissenting), citing *Beister v. John Hancock Mutual Life Insurance Co.*, 356 F.2d 634 (8th Cir. 1966).

The trial court, in its order, referenced courts from other jurisdictions which have considered similar policy language. We shall discuss these cases for guidance in construing the language, but these cases do not constitute binding precedent. In *Pressman v. Aetna Cas. and Sur. Co.*, 574 A.2d 757 (R.I. 1990), the insured lost business income as the result of an interruption of his business due to a power failure caused by a tree adjacent to the insured's property falling onto the powerline that runs into the insured's building. The dispute focused on the " 'away from the described premises' " language contained in the following exclusion:

"Section I does not apply to loss or damage caused or resulting from the following:

. . . .

"7. Interruption of power or other utility service furnished to the described premises if the interruption takes place away from the described premises. If a peril not otherwise excluded results on the described premises, we cover the resulting loss."

(Emphasis omitted.) *Id.* at 758. The policy defined premises as " ' "the interior of that portion of any building at the location described in the Declarations which is occupied by you in conducting your business." ' " *Id.* The *Pressman* court reasoned that applying the narrow definition of the term "premises" would render the power-interruption coverage illusory and stated, "In effect this exclusion would preclude coverage in almost any circumstance unless the insured had his own generator located inside the building. We believe this result is unconscionable." *Id.* at 759. The *Pressman* court therefore found the phrase "away from the described premises" to be ambiguous.

In *Brooklyn Bridge, Inc. v. S.C. Insurance Co.*, 309 S.C. 141, 420 S.E.2d 511 (S.C. App. 1992), the insured, a restaurant, sustained food spoilage as a result of a general power failure caused by a hurricane. The exclusionary language in the insurance policy in that case is identical to that found in TCP's policy with Union in the instant case with the exception of the second sentence under the "Power Failure" section, which under the policy at issue in *Brooklyn Bridge, Inc., supra*, states: " 'But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.' " *Id.* at 143, 420 S.E.2d at 512. Like TCP's policy in the instant case, section B.1.e. of the policy at issue in *Brooklyn Bridge, Inc., supra*, provided that loss or damage caused either directly or indirectly by the failure of power supplied to the premises is not covered if it occurs away from the premises. The trial judge found that there was coverage because business personal property was lost and that although a failure of power occurred away from the premises, the loss resulted from a hurricane and a hurricane was a covered cause of loss. The insurer argued that section B.1.e. meant that there was no coverage provided where there was a loss resulting from an off-premises power failure and that the second sentence of section B.1.e. meant coverage would be provided where the loss or damage by a covered cause of loss resulted from a power failure, with an example being where a fire occurs as a result of an off-premises power failure. The South Carolina Court of Appeals stated:

> [H]ad the insurance company intended for the limitation to the exclusion to apply only when a covered cause of loss resulted from a power failure, it could have specifically provided for the same by stating, "But if loss or damage by a Covered Cause of Loss results *from a power failure*, we will pay for that resulting loss or damage." The simple addition of these four words would have made the second sentence clear and unambiguous. The failure to include these words lends itself to ambiguity, for, in the absence of their inclusion, the restaurant's and the trial judge's interpretation are just as logical as that which the insurance company advances.

*Id.* at 144, 420 S.E.2d at 512-13.

The South Carolina appellate court mentioned several other policy exclusions, each of which set forth a limitation to the

exclusion to specifically provide coverage where a fire results, and the court stated, "Had the insurance company desired to require the cause of loss to result from some specific event or events in order to provide coverage relative to power failure, it could have easily provided for it as it did with the above cited exclusions and their limitations." *Id.* at 145, 420 S.E.2d at 513. Further, in affirming the trial court's finding in favor of coverage, the appellate court stated:

> Finally, the insurance company's interpretation of the second sentence of Section B.1.e. is inconsistent with Section B.1. which basically says that an exclusion is an exclusion *regardless* of any other cause or event that contributes concurrently or in any sequence to the loss. Under Section B.1., even a fire which results from a power failure would not be covered since it was caused by a power failure which is excluded. Where an internal inconsistency in an insurance policy renders it ambiguous, and the policy is susceptible of more than one reasonable interpretation, one of which would provide coverage, coverage must be found as a matter of law.

*Id.*

In *Mapletown Foods v. Motorists Mut. Ins.*, 104 Ohio App. 3d 345, 662 N.E.2d 48 (1995), the occurrence of a power outage caused by a downed wire away from the insured premises resulted in food spoilage at two of the insured's stores. The exclusionary language in that case is identical to that found in *Brooklyn Bridge, Inc. v. S.C. Insurance Co.*, 309 S.C. 141, 420 S.E.2d 511 (S.C. App. 1992). The *Mapletown Foods* court found *Pressman v. Aetna Cas. and Sur. Co.*, 574 A.2d 757 (R.I. 1990), to be distinguishable because of the narrow meaning of premises applicable in that case and believed *Brooklyn Bridge, Inc., supra,* to be wrongly decided because that court's decision left no meaning for the words "away from the premises." The *Mapletown Foods* court found no ambiguity in the exclusionary language of the insurance policy and stated:

> If the power failure in [this] case does not fall within the meaning of a power failure "away from the premises" then the phrase is bereft of meaning. Significantly, plaintiff's able counsel at oral argument was unable to suggest any circumstance in which the insured could not recover for a power

failure. We must give meaning to the exclusion if we reasonably can. Its ordinary meaning is that there is no coverage when the power failure occurs away from the premises, *i.e.*, at the utility's power station or somewhere off the plaintiff's premises. That is a reasonable construction and the one applicable to th[is] case.

*Id.* at 349, 662 N.E.2d at 50.

In *Lakes' Byron Store v. Auto-Owners Ins.*, 589 N.W.2d 608 (S.D. 1999), the insurer denied a claim for losses caused by power failure, and again the focus of the dispute was the "away from the described premises" phrase. The exclusionary language in that case is the same as that found in *Brooklyn Bridge, Inc., supra*, and *Mapletown Foods, supra*. The South Dakota Supreme Court held in *Lakes' Byron Store, supra*, that the exclusion for losses caused by power failure occurring away from the insured premises was not ambiguous, and the court barred coverage for losses caused by a power failure when a snow and ice storm damaged power poles and lines located outside of the insured premises.

In the cases discussed above, the various jurisdictions were not always in agreement in construing similar or identical language. In TCP's brief, it cites to a Minnesota case and asserts that a split in decisional authority has been held to be a basis for finding ambiguity. However, in *Moller v. State Farm Mut. Auto. Ins. Co.*, 252 Neb. 722, 566 N.W.2d 382 (1997), the Nebraska Supreme Court recognized that cases from other jurisdictions were split on whether the phrase "lives with" is ambiguous. Nonetheless, in applying the rules of construction, the court found as a matter of law that the phrase was not ambiguous.

Finally, in *Weeks v. Co-Operative Ins. Cos.*, 149 N.H. 174, 817 A.2d 292 (2003), the insurer denied a claim for damage to a wall after the insurer's expert determined that negligent workmanship caused the damage. The policy insured against " 'direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss.' " *Id.* at 174, 817 A.2d at 294. The policy defined covered cause of loss as " 'Risks Of Direct Physical Loss unless the loss is: a. Excluded in Section B., Exclusions; or b. Limited in Paragraph A.4., Limitations.' " *Id.* Section B of the policy stated in part:

"We will not pay for loss or damage caused by or resulting from any of the following . . . . But if an excluded cause of loss that is listed [below] results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss."

*Id.* Negligent work was listed below. Section B further stated: " 'We will not pay for loss or damage caused by or resulting from any of the following,' " and several problems were listed under " 'Other Types Of Loss.' " *Id.* at 175, 817 A.2d at 294. The policy then stated: " 'But if an excluded cause of loss that is listed [above] results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.' " *Id.* at 175, 817 A.2d at 295.

The insurer and insured in *Weeks, supra*, each filed a motion for summary judgment. The insurer argued that the policy excluded the loss under both the "negligent work" exclusion and the "other types of loss" exclusion. The insured argued that although negligent workmanship is not covered, physical damage to property resulting from negligent workmanship is covered. The trial court found an ambiguity in the policy's language and granted summary judgment in favor of the insured. On appeal, the Supreme Court of New Hampshire reversed, holding that the negligent work exclusion barred coverage, even though the exclusion contained an exception providing coverage if an excluded cause of loss resulted in a covered cause of loss because there was no subsequent ensuing cause of loss separate and independent from the faulty workmanship.

In looking at the language of the policy in the case at hand, the first sentence of section B.1.e. clearly excludes coverage for loss or damage caused by a failure of power if the failure occurs away from the described premises. In this case, a power failure occurring at a substation away from the meatpacking business' premises caused the damage to the business' compressors.

We next look to the second sentence of section B.1.e., "But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." According to the policy, covered causes

of loss are risks of direct physical loss unless the loss is excluded in Section B. or limited in paragraph A.4. Substituting that definition and paraphrasing, the second sentence would read: "If failure of power results in a risk of direct physical loss that is neither limited nor excluded under the policy, Union will pay for the loss or damage caused by that risk." Thus, if a power failure resulted in a fire (which is a risk of direct physical loss that is neither limited nor excluded under the policy), Union would pay for the loss or damage caused by that fire. The potential problem with this interpretation is that section B.1. states: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." In *Brooklyn Bridge, Inc. v. S.C. Insurance Co.*, 309 S.C. 141, 420 S.E.2d 511 (S.C. App. 1992), the appellate court took the position that such an internal inconsistency rendered the policy ambiguous. We do not agree.

Section B.1. of the policy at issue in the instant case appears to be a general, blanket exclusionary statement to exclude damage caused by any of the delineated risks that follow. The second sentence of section B.1.e., on the other hand, sets forth a specific exception to the general exclusionary language when a power failure is involved. In Nebraska case law, it is a general principle of statutory construction that specific statutory provisions relating to a particular subject control over general provisions. *Reed v. Parratt*, 207 Neb. 796, 301 N.W.2d 343 (1981); *Lentz v. Saunders*, 199 Neb. 3, 255 N.W.2d 853 (1977). Although we find no Nebraska case applying—or disapproving—such a rule of construction as applied to provisions of an insurance policy, the Nebraska Supreme Court has repeatedly emphasized that an insurance policy must be construed as any other contract. See, e.g., *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998). While construing a contract in *Krzycki v. Genoa Nat. Bank*, 242 Neb. 819, 496 N.W.2d 916 (1993), the Nebraska Supreme Court first determined that the contract was not ambiguous. The *Krzycki* court then applied the rule that where general and specific terms in a contract may relate to the same thing, the more specific provision controls. Because the Nebraska Supreme Court has directed that an insurance policy be construed

as any other contract and because general contract interpretation recognizes the rule that a more specific provision controls over a general term, we believe it is proper to apply that rule of contract interpretation in the construction of an insurance policy.

We also observe that other jurisdictions have applied such a construction. In holding that a specific provision in the insurance policy governed over a general provision, the New Mexico Supreme Court in *Weldon v. Commercial Union Assur. Co.*, 103 N.M. 522, 524, 710 P.2d 89, 91 (1985), recognized:

> "Moreover, a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates." *Furtado v. Metropolitan Life Insurance Co.*, 60 Cal.App.3d 17, 25, 131 Cal.Rptr. 250, 255 (1976) (quoting *General Insurance Co. of America v. Truck Insurance Exchange*, 242 Cal.App.2d 419, 426, 51 Cal.Rptr. 462, 468 (1966)[)]. *See also California Packing Corp. v. Transport Indemnity Co.*, 275 Cal.App.2d 363, 370, 80 Cal.Rptr. 150, 155 (1969) ("Where general and specific provisions of an insurance policy differ as to its coverage or applicability, the specific provisions will prevail"). *See also Edmondson v. Motorists Mutual Insurance Co.*, 48 Ohio St.2d 52, 53, 356 N.E.2d 722, 723 (1976). (The general rule is "that when an [insurance] agreement contains both a general and a specific provision, the latter controls if the two may not otherwise be reconciled.") In other words, "general expressions of coverage in the insuring clause of an insurance policy do not render ineffective the limitations provided by exclusions stated in subsequent clauses of the policy." 13 *J. Appleman, Insurance Law and Practice* § 7387, at 181 (1976).

The South Carolina Court of Appeals in *Brooklyn Bridge, Inc. v. S.C. Insurance Co.*, 309 S.C. 141, 420 S.E.2d 511 (S.C. App. 1992), also noted that several other policy exclusions such as earth movement, volcanic eruption, governmental action, nuclear hazard, water, electrical apparatus, and steam apparatus included a limitation to the exclusion to specify coverage where a fire results. The court stated, "Had the insurance company desired to

require the cause of loss to result from some specific event or events in order to provide coverage relative to power failure, it could have easily provided for it as it did with the above cited exclusions and their limitations." *Id.* at 145, 420 S.E.2d at 513. However, the *Brooklyn Bridge, Inc.* court did not recognize that the same "internal inconsistency" would arguably apply to each of the other policy exclusions that the court cited. *Id.*

Similar to the policy in *Brooklyn Bridge, Inc.*, TCP's policy with Union in the instant case also includes a number of exceptions to the exclusions included under section B.1. For example, section B.1.b., the paragraph on the earth movement exclusion, states in part:

(1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. *But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.*

(2) Volcanic eruption, explosion or effusion. *But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.*

(Emphasis supplied.)

As another example, section B.1.d., the nuclear hazard exclusion, states: "Nuclear reaction or radiation, or radioactive contamination, however caused. But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire." If the parties intended section B.1. to have the effect as that mentioned by *Brooklyn Bridge, Inc., supra*, what possible purpose would the inclusion of such exceptions serve? A contract must be construed as a whole, and if possible, effect must be given to every part thereof. *Big River Constr. Co. v. L & H Properties*, 268 Neb. 207, 681 N.W.2d 751 (2004). We believe these provisions were inserted for some purpose, and the reasonable explanation is that they were crafted to provide an exception for that specific risk of loss to restore coverage where such coverage would otherwise be eliminated under the exclusionary clause. The fact that the exception under power failure speaks in terms of "Covered Cause of Loss" rather

than a more specific risk such as a fire or an explosion as found in the examples above does not affect our conclusion. It merely means that the exception to the exclusion was not intended to be limited to just fire; rather, the exception would be applicable if a power failure resulted in any risk of direct physical loss or damage that is neither a limitation nor an exclusion under the terms of the policy and which risk caused loss or damage. In this case, the power failure did not result in a covered cause of loss, and thus, the exception found in the second sentence of section B.1.e. is not applicable.

To summarize, we find no ambiguity in the exclusionary language under section B.1.e. Section B.1. is a general exclusionary clause that eliminates coverage based upon certain listed causes of loss. Some of these listed causes of loss, including power failure, provide an exception to the exclusion that would restore coverage. The exception is not applicable in this case. We must therefore reverse the decision of the trial court.

*Remaining Assignments of Error.*

Union assigned error to the trial court's judgment against it and to the award of attorney fees and costs. TCP argues on cross-appeal that the amount of damages awarded was too little. The trial court determined that coverage existed and entered judgment against Union for $8,250 less a $250 deductible, for a final judgment of $8,000 in favor of TCP. Because we have determined that the policy is not ambiguous and that coverage does not exist, we remand the matter with direction to vacate the judgment against Union. The court also ordered Union to pay to TCP $8,129.73 for attorney fees and costs. Such awards are authorized under Neb. Rev. Stat. §§ 44-359 (Reissue 2004) and 25-1708 (Reissue 1995) when the action is successful. Because we conclude that the district court erred in finding that coverage existed, TCP did not successfully sue Union and was thus not entitled to attorney fees and costs under these sections. Accordingly, we direct the lower court to also vacate the award of attorney fees and costs entered against Union.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in allowing testimony, evidence, and an amendment to

Union's answers relating to the power failure exclusion contained in the insurance policy. We further conclude that the trial court erred in finding the policy to be ambiguous and in entering an award in favor of TCP. We therefore reverse, and remand with directions to vacate the judgment and the award of attorney fees and costs against Union.

REVERSED AND REMANDED WITH DIRECTIONS.