## EMPLOYERS MUTUAL CASUALTY COMPANY

v.

### Horacio PIRES et al.

### No. 97–323–Appeal.

Supreme Court of Rhode Island.

Jan. 22, 1999.

Mark Nugent, Valerie A. Connor, Michael J. Marcello, Providence, for plaintiff.

Raymond A. Marcaccio, Providence, for defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case concerns the enforceability of an insurance-coverage exclusion for incorrectly performed work in a commercial-general-liability (CGL) policy issued to a construction contractor. The plaintiff-insurer, Employers Mutual Casualty Company (EMCC or plaintiff), appeals from a Superior Court judgment in favor of the defendant-contractor, Horacio Pires d.b.a. Horacio Pires Painting and Remodeling (Pires or defendant). EMCC initiated a declaratory-judgment action seeking a Superior Court ruling that the CGL policy it issued to Pires specifically excluded coverage for losses resulting from Pires' incorrectly performed work on a residential remodeling job. We ordered the parties to show cause why we should not resolve this appeal summarily. None having been shown, we proceed to decide the appeal at this time.

Pires owned an unincorporated business that did painting and remodeling work. In September of 1992, EMCC issued a CGL policy to Pires containing a $500,000 liability limit on coverage for bodily injury and property damage. While this policy was in effect, Pires entered into a subcontract with a general contractor, Bruce Eddy d.b.a. Eddy Building Co., Inc. (Eddy), to paint replacement windows and doors that Eddy had installed in a home. After Pires finished painting, Eddy noticed scratches on the window panes that he believed occurred when Pires sanded the window frames. As a result, Eddy filed suit in Superior Court against

Pires to recover for the damage to the panes, alleging negligence and breach of contract.

Pires then notified EMCC of this claim, thereby requesting it to defend him in this lawsuit and to provide coverage for him under his CGL policy. EMCC, however, denied coverage for the claim based upon the policy's coverage exclusion for "incorrectly performed" work by the insured on property that requires repair, replacement, or restoration. On January 27, 1995, EMCC filed the present declaratory-judgment action, naming Pires and Eddy as defendants and seeking a declaration that EMCC has no duty to defend or indemnify Pires. Pires filed several counterclaims, seeking a declaration that EMCC has a duty to defend and indemnify him based upon: the CGL policy (count 1); Pires' reasonable expectations of liability coverage (count 2); equitable estoppel (count 3); waiver (count 4); and public policy (count 5). Pires also sought damages under each of these counts, including attorney fees and costs.

On September 19, 1996, EMCC filed a motion for summary judgment. Upon reviewing the memoranda and hearing arguments, a Superior Court motion justice denied EMCC's motion and entered an order that included the following provisions:

"2. Employers Mutual denied coverage to defendant, relying upon an exclusion found at section I, subsection (2)(j)(6) of the insurance policy.

"3. The aforesaid exclusion provision is clear and unambiguous.

"4. I nonetheless find that the exclusion shall not be applicable, since to give it application would violate the objectively reasonable expectations of the insured for coverage for property damage, in accordance with *Pressman v. Aetna Casualty & Surety Co.*, 574 A.2d 757 (R.I.1990), and other relevant decisions.

"5. Consequently, I find that Employers Mutual has a duty and obligation to indemnify and defend Pires against the claims asserted in the underlying action of *Bruce Eddy v. Pires*, C.A. No. PC 94–4346."

On March 13, 1997, the court entered final judgment for Pires on EMCC's declaratory-judgment claim pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.

■ The sole issue on EMCC's appeal is whether the motion justice erred in declaring that the policy exclusion for faulty workmanship was inapplicable because it contravened the insured's objectively reasonable expectations of coverage. The pertinent policy provisions read as follows:

"[Section I(A)(1)(a)—Coverages—Insuring Agreement] We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. ***

"[Section I(A)(2)—Exclusions] This insurance does not apply to:
***

"(j.) 'Property damage' to:
***

"(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.
***

"[Section V(15)—Definitions]: 'Your work' means:

"a. Work or operations performed by you or on your behalf; and

"b. Materials, parts or equipment furnished in connection with such work or operations."

In declaring that EMCC had an obligation to defend and indemnify Pires, the motion justice relied primarily on the case of *Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757 (R.I.1990). In *Pressman*, a sole-proprietor psychologist brought an action against his insurer after it refused to reimburse him for losses sustained as a result of an interruption to his practice caused by an electrical power loss. The power failure occurred when a tree adjacent to his property fell into a power line that supplied his building. The defendant-insurance company (Aetna) denied coverage based on an exclusion for interruptions of power that take place "away from the described premises." *Id.* at 758. The Superior Court granted

summary judgment to Aetna, holding that the exclusion was clear and unambiguous. *See id.* On appeal, this Court vacated the judgment. Initially, we held that the phrase "away from the described premises" was ambiguous. *Id.* at 759. To interpret that phrase narrowly, we concluded, would be unconscionable and would render the power-interruption coverage illusory: "In effect this exclusion would preclude coverage in almost any circumstance unless the insured had his own generator located inside the building ." *Id.* Furthermore, we determined that we should interpret the policy's language by ascertaining "not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." *Id.* at 760 (quoting *Elliott Leases Cars, Inc. v. Quigley,* 118 R.I. 321, 326, 373 A.2d 810, 812 (1977)). This Court reaffirmed its holding in *Pressman* a year later in *Jerry's Supermarkets, Inc. v. Rumford Property and Liability Insurance Co.,* 586 A.2d 539, 540 (R.I.1991) (holding that a power-interruption exclusion does not bar coverage when the insured reasonably believed that the "multiperil" policy would cover the contents of its buildings in the case of a hurricane).

Here, the motion justice took into account several facts that seemed to favor coverage. First, he concluded that Pires had taken out the CGL policy to provide coverage against any claims that he or his employees performed negligent work resulting in property damage to personal property. Second, the motion justice noted that the exclusion in question was "buried" in the policy: "This little tidbit at the very end of the last exclusion, you go down 78 numbered exclusions and 6 more numbers to the bottom, you find this ***." Applying these findings, the motion justice stated:

> "This was a guy out in the field working in commerce, so-to-speak. He's going to be working on the property of another, he buys a liability policy and then he finds this exclusion buried at the bottom of the coverage.
>
> "I think that it completely negates the purpose for which he took out the insurance in the first place. He wanted coverage against his negligence and the negligence of his employees if they incur some damage. He doesn't have [it under] this exclusion. This exclusion takes it away from him ***.

> "I think the only fair declaration here is to indicate that there's nothing ambiguous about [the exclusion], but it violates the general tenor of why the person took out the insurance in the first place. He got a policy that says it's a policy against general liability. It's a comprehensive policy; isn't it?"

In *Pressman,* the Court determined that the exclusion at issue was ambiguous. However, in this case, the motion justice ruled that there was "no question" that the exclusion was "clear and unambiguous." Notwithstanding this distinction, the motion justice held that the exclusion was unenforceable because "it violates the general tenor of why the person took out the insurance in the first place," and "violate[s] the objectively reasonable expectations of the insured for coverage for property damage."

As a general proposition, this Court applies the same rules when construing insurance policies as it does when construing contracts. *See Martinelli v. Travelers Insurance Companies,* 687 A.2d 443, 445 (R.I. 1996). We will not depart from the literal language of the policy absent a finding that the policy is ambiguous. *See id.* To determine whether a policy is ambiguous, we read the policy in its entirety, giving each word its plain, ordinary, and usual meaning. *See id.* If the policy terms are ambiguous or capable of more than one reasonable meaning, then we will strictly construe the policy in favor of the insured and against the insurer. *See id.* However, we will not engage in mental gymnastics, nor will we stretch the language in a policy to read ambiguity into it where none is present. *See Mallane v. Holyoke Mutual Insurance Company in Salem,* 658 A.2d 18, 20 (R.I.1995).

In the case at bar, the trial justice found the exclusory language at issue to be clear and unambiguous, notwithstanding its "buried" location in the policy. We agree with this determination. Moreover, other courts reviewing similar exclusions for faulty work-

manship also have found such language to be unambiguous. Upon doing so, however, they have applied such exclusions as they were written to preclude coverage for negligence claims based upon allegations of incorrectly performed work. See *J.Z.G. Resources, Inc. v. King*, 987 F.2d 98 (2d Cir.1993) (holding that the risks intended to be insured by the CGL policy do not include contract liability for only faulty workmanship); *Lusalon, Inc. v. Hartford Accident and Indemnity Co.*, 400 Mass. 767, 511 N.E.2d 595 (Mass.1987) (holding that a similar provision is not ambiguous and excludes coverage for faulty workmanship); *Alverson v. Northwestern National Casualty Co.*, 559 N.W.2d 234 (S.D.1997) (holding that the same exclusion for an insured's incorrectly performed work in a CGL policy is unambiguous and that it precludes coverage for replacement windows scratched by the insured's employees during cleaning, notwithstanding the insured's expectations of coverage); *Houston Building Service, Inc. v. American General Fire and Casualty Co.*, 799 S.W.2d 308 (Tex.Ct.App.1990) (holding that a similar provision is not ambiguous and excludes coverage for faulty workmanship).

▪ Accordingly, we agree with the motion justice that the policy exclusion at issue here is unambiguous, but we conclude that the motion justice erred in rewriting the policy to reflect Pires' expectations of coverage. Even in *Pressman*, where this Court took into account the objectively reasonable expectations of the insured, we first determined that the insurance documents were ambiguous. Here, absent any ambiguity in the policy's language, we will apply the exclusion as written unless doing so would render illusory the coverage provided. In that regard, cases from other jurisdictions indicate that courts typically enforce unambiguous faulty-workmanship exclusions as written.

Moreover, these cases serve to undermine Pires' position that literal enforcement of this exclusion would violate his objectively reasonable expectations about the policy's scope of coverage. In addition, in this case, the policy's exclusion for property damage caused by the insured's faulty workmanship on such property constituted only a subset of the universe of potential property damage that the insured subcontractor's negligent conduct could cause in connection with a construction project. Thus, enforcing this exclusion will not cause the general-liability-coverage provisions to become illusory or nugatory.

▪ Nonetheless, the record before us is unclear concerning whether Pires "incorrectly performed" work on the damaged window panes or whether Pires damaged the panes accidentally when he performed work on the frames. If Pires performed work on the window panes in connection with painting the window frames (for example, by taping the surface of the panes during the prepainting process, or by cleaning and/or scraping the panes before or after applying paint to the frames) and he negligently damaged the panes as part of such a preparation or cleanup operation, then the damage would fall within the exclusion for incorrectly performed work. If, on the other hand, Pires did not intentionally perform work on the window panes in connection with painting the window frames, but only damaged them accidentally when he was performing work on the frames, then such damage would not fall within the policy's exclusion for "incorrectly performed" work on such property.[1] This is a fact question, however, that we are unable to answer on the present state of the record.

For the foregoing reasons, we sustain the appeal, vacate the summary judgment, and

---

1. Moreover, if Pires' faulty work caused damage to other property in addition to the property on which he incorrectly performed work, then the policy's damage exclusion would not apply to this other property. Thus, even if the court found that the damage exclusion was applicable, it would apply, according to its terms, only to "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed *on it*." (Emphasis added.) For this reason, even if Pires damaged the window panes by incorrectly performing work on them, the excluded damage would be limited just to the cost of repairing or replacing the damaged panes. If other property also had to be repaired or replaced because of the window-pane problem, then the exclusion would not apply to that other property if the contractor performed no work "on it," and the contractor would be allowed to obtain liability coverage for damages involving that other property.

remand the case for further proceedings consistent with this Court's opinion.