DECISION AND JUDGMENT ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Welfle Inc. entered into a contract to remove asphalt from a bridge owned by Medina County. Welfle set its milling machine to grind too deeply, *Page 2 
damaged the underlying concrete deck, and was required to reimburse Medina County for the cost of repairs. It then sought coverage under a comprehensive general liability insurance policy that The Motorist Insurance Group had issued to it. Motorist denied coverage, and Welfle brought this declaratory judgment action against it. The trial court determined that Welfle was not entitled to coverage. The issue before this Court is whether the concrete deck was either "[t]hat particular part of real property" on which Welfle was "performing operations" or "[t]hat particular part of any property" that had to be repaired because Welfle incorrectly performed work "on it." This Court affirms the decision of the trial court granting summary judgment to Motorist because the bridge deck had to be repaired as a result of Welfle incorrectly performing work on it.
 I. {¶ 2} Welfle is in the business of removing asphalt and concrete from roads and bridges so new asphalt or concrete can be applied. During 2004, it was a subcontractor on a job in Medina County to repair a box beam bridge on Friendsville Road. Welfle's assignment was to remove the existing asphalt from the concrete bridge deck so new asphalt could be applied to it. The value of its subcontract was $3,958.50.
 {¶ 3} In order to remove the asphalt from the bridge deck, Welfle used a machine called a rotomill. A rotomill can be used to remove either asphalt or concrete. It is operated by a three member crew. One crewmember, the operator, stands atop the machine and controls its forward progress. The other two *Page 3 
crewmembers walk beside the machine, one on each side, and watch for obstructions, such as manhole covers, ahead of the machine.
 {¶ 4} The rotomill that Welfle used on the Friendsville Road Bridge has a grinding drum that is six feet six inches wide with 165 carbide bits on it. As the asphalt or concrete is being ground from the surface under the rotomill, the resulting debris is loaded onto a truck following the rotomill by way of a conveyor mounted on the back of the rotomill. The crewmembers on either side of the machine set the depth to which the drum grinds the asphalt or concrete being removed.
 {¶ 5} A representative of Medina County told the Welfle crew assigned to the Friendsville Road Bridge project that there were eight inches of asphalt that needed to be removed from the bridge deck to expose the concrete. As they started making their first 6-foot-6-inch wide pass over the bridge, they set the drum to grind seven inches deep. Although crewmembers can normally hear when the bits cut into concrete underlying asphalt, the construction of the bridge apparently muffled the sound so they did not hear anything unusual. When the first truck was filled with debris and the crew stopped so that truck could be replaced by an empty truck, however, they saw that they had been cutting into the concrete bridge deck. They raised the drum to a point at which it would no longer cut into the deck and continued their first pass. Even with the drum set at this new depth, however, they again cut into the concrete deck. After they completed their *Page 4 
first pass, the crew had no further problems as they removed the rest of the asphalt from the bridge deck.
 {¶ 6} There was at least one point during the first pass at which the rotomill cut two inches deep into the concrete deck. This weakened the bridge deck to such an extent that, as a truck was driven over it, it cracked. Because of the damage to the bridge deck, it was necessary to pour new concrete on the entire deck.
 {¶ 7} Because Medina County had incorrectly instructed Welfle that there were at least eight inches of asphalt on the bridge deck, it assumed financial responsibility for the first time Welfle's crew cut into the deck. The county maintained, however, that Welfle was responsible for the rest of the damage to the deck. Welfle contributed $39,630.59 toward repair of the bridge deck, and sought reimbursement from Motorist.
 {¶ 8} Motorist declined coverage for the damage to the bridge deck based upon two exclusions found in the comprehensive general liability policy it had issued to Welfle. Welfle brought this declaratory judgment action against Motorist, and both parties moved for summary judgment. The trial court denied Welfle's motion and granted Motorist's motion. Welfle appealed to this Court.
 II. {¶ 9} Welfle has assigned three errors on appeal, but they all amount to an argument that the trial court incorrectly granted Motorist's motion for summary *Page 5 
judgment and incorrectly denied its motion for summary judgment. The trial court did not err in granting Motorist's motion and denying Welfle's motion.
 III. {¶ 10} In reviewing a trial court's order ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co., 66 Ohio App. 3d 826, 829 (1990). None of the historical facts in this case are in dispute. Further, insurance policies are contracts, and their interpretation is a matter of law for the court. City of Sharonville v.Am. Employers Ins. Co., 109 Ohio St. 3d 186, 187 (2006) (citingAlexander v. Buckeye Pipe Line Co., 53 Ohio St. 2d 241, paragraph one of the syllabus (1978)). The only question, therefore, is which party was entitled to judgment as a matter of law based upon the provisions of the insurance policy at issue.
 {¶ 11} Motorist has argued that it was entitled to judgment as a matter of law based upon two faulty-workmanship exclusions found in the policy it issued Welfle:
 2. Exclusions
 This insurance does not apply to:
. . .
 j. Damage To Property "Property damage" to: *Page 6 
 5.That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
 6.That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
Motorist's position is that the bridge deck was "[t]hat particular part of real property" on which Welfle was performing operations and the damage to the bridge deck arose from those operations. In addition, according to Motorist, Medina County had to repair the bridge deck because Welfle incorrectly performed work on it.
 {¶ 12} Welfle has primarily relied on the decision of the Rhode Island Supreme Court in Employers Mut. Cas. Co. v. Pires, 723 A.2d 295 (R.I. 1999), as support for its position. In that case, a painting contractor was hired to paint replacement windows and doors that a general contractor had installed in a home. After the painting was completed, the general contractor noticed scratches on the window panes which, it believed, the painting contractor had caused while it was sanding the window frames. The general contractor sued the painting contractor for the cost of repairs, and the painting contractor tendered defense of the action to its liability insurer. The liability insurer brought a declaratory judgment action, seeking a ruling that it had no duty to defend the painting contractor because of an *Page 7 
exclusion in its policy identical to the j(6) exclusion relied upon by Motorist in this case. The court determined that whether the insurer had a duty to defend depended on what the contractor was doing when it caused the damage:
 [T]he record before us is unclear concerning whether Pires "incorrectly performed" work on the damaged window panes or whether Pires damaged the panes accidentally when he performed work on the frames. If Pires performed work on the window panes in connection with painting the window frames (for example, by taping the surface of the panes during the pre-painting process, or by cleaning and/or scraping the panes before or after applying paint to the frames) and he negligently damaged the panes as part of such a preparation or cleanup operation, then the damage would fall within the exclusion for incorrectly performed work. If, on the other hand, Pires did not intentionally perform work on the window panes in connection with painting the window frames, but only damaged them accidentally when he was performing work on the frames, then such damage would not fall within the policy's exclusion for "incorrectly performed" work on such property.
Pires, 723 A.2d at 299. Welfle has argued that this case is analogous to the painting contractor causing damage to the panes while working on the frames:
 By analogy then, the asphalt is the window frames and the concrete deck is the window pane.
Appellant's Brief at 14.
 {¶ 13} Welfle has drawn the wrong analogy from Pires. The painting contractor in that case was not required to remove the window frames from the panes as part of its work. In this case, however, Welfle was required to remove the asphalt from the bridge deck as part of its work. The true analogy to be drawn from Pires is to the painting contractor damaging the panes while scraping them *Page 8 
before or after painting the frames. According to the court, if the painting contractor damaged the panes while purposely scraping them, it would have done so while working on them and, therefore, the exclusion would apply. In this case, Welfle damaged the bridge deck while removing asphalt from it. Rather than scraping the asphalt from the bridge deck with the type of tool a painter would use to scrape paint or other material from a window pane, it was using a rotomill. The situation, however, is analogous. If a painting contractor misuses a scraper while using it to remove paint or other material from window panes thereby damaging the panes, it has incorrectly performed work on the panes and coverage for the cost of their repair is excluded by the j(6) exclusion. In this case, Welfle misused its rotomill while using it to remove asphalt from the bridge deck thereby damaging the bridge deck. Accordingly, it damaged the bridge deck while working on it, and the cost of repairing the bridge deck is excluded by the j(6) exclusion.
 {¶ 14} The trial court correctly granted summary judgment to Motorist and correctly denied summary judgment to Welfle based upon the j(6) exclusion. It is unnecessary, therefore, to determine whether coverage for the damage to the bridge deck was also excluded by the j(5) exclusion.
 IV. {¶ 15} Welfle's assignments of error are overruled. The trial court's judgment is affirmed.
 Judgment affirmed. *Page 9 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 WHITMORE, P. J. and MOORE, J. CONCUR *Page 1