DECISION
The Defendant, Travelers Property and Casualty Company (Travelers) moves for summary judgment pursuant to Super. R. Civ. P. 56. The Plaintiff, WM Hotel Group, LLC (WM Hotel or Plaintiff) objects to the motion.
 I Facts and Travel
This action arises as a result of the installation of bathroom tubs in a hotel. WM Hotel is the owner and builder of the Hampton Inn Suites located in Middletown, R.I. Defendant Pride Construction (Pride) was the general contractor for the construction of the hotel. Defendant Antcil Plumbing Mechanical Contractors, Inc. (Antcil) was the plumbing subcontractor and installed bathtubs which are the subject matter of this case. *Page 2 
Travelers insured Antcil under a Commercial General Liability policy (the CGL policy). Antcil installed the tubs in the hotel during the spring and summer of 2003. Third Party Defendant, Bootz Manufacturing Co., (Bootz) had manufactured the tubs for Defendant Eljer Plumberware, Inc. (Eljer) under its label. After completion of the installation of the tubs by Antcil, each was tested for leaks, and then Antcil placed "tub protectors" in the tubs and transferred control of them to the general contractor, Pride.
Some time later, the tubs began evidencing rust, cracking, and sagging. The tub from Room 431 was removed and forensic testing was done. The tests revealed that a styrofoam "sound deadening pad" was missing from underneath the tub. A report later submitted by the testing entity concluded that the absence of this pad could have contributed to the "deflection of the bathing surface."
WM Hotel, in its Third Amended Complaint, asserts, inter alia, that ninety-three (93) of the ninety-five (95) bathtubs installed at the hotel were either defective as manufactured and/or as installed. Further, WM Hotel alleges that it was Antcil's faulty or negligent installation that resulted in subsequent damage to the tubs.
Travelers has filed a motion for summary judgment, maintaining that the CGL policy entered into with Antcil does not provide coverage for the damages alleged by WM Hotel. Specifically, Travelers argues that the damage incurred was not the result of an "occurrence" as defined in the policy. Travelers further argues that the exclusionary language in the policy itself precludes coverage. WM Hotel objects to the motion, arguing that the under the language of the CGL policy, and relevant caselaw, Travelers must reimburse it for the damages incurred as a result of Antcil's defective workmanship. *Page 3 
 II Standard of Review
It is axiomatic that "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings, and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact."Palmisciano v. Burrillville Racing Assoc., 603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v.Kowal, 419 A.2d 297 (R.I. 1980)); Super. R. Civ. P. 56(c). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law."Konar v. PFL Life Ins. Co., 840 A.2d 1115, 1117 (R.I. 2004). Furthermore, the party opposing the motion for summary judgment carries "the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Tanner v.Town Council of East Greenwich, 880 A.2d 784, 791 (R.I. 2005) (quotingLucier v. Impact Recreation, Ltd., 864 A.2d 635, 638 (R.I. 2005)). Only "[w]hen an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in light most favorable to the party opposing the motion, reveals no such [disputed material issue of fact,] the suit is ripe for summary judgment."Industrial National Bank v. Peloso, 121 R.I. 305, 306, 397 A.2d 1312,1313 (1979). *Page 4 
 III Analysis
When construing an insurance policy, the court "need only look at the question of whether the damages to the property are covered by the terms of that policy, and if so, whether [the insurer] has any affirmative defenses, including exclusions to and limitations of the policy, that would bar coverage." General Accident Ins. Co. v. American NationalFireproofing, Inc., 716 A.2d 751, 757 (R.I. 1998). Additionally, a court should "not depart from the literal language of the policy absent a finding that the policy is ambiguous." Employer's Mutual v. Pires,723 A.2d 295, 298 (R.I. 1999). The Pires Court further noted:
 To determine whether a policy is ambiguous, we read the policy in its entirety, giving each word its plain, ordinary, and usual meaning. If the policy terms are ambiguous or capable of more than one reasonable meaning, then we will strictly construe the policy in favor of the insured and against the insurer. However, we will not engage in mental gymnastics, nor will we stretch the language in a policy to read ambiguity into it where none is present. Id. (citations omitted.)
In the case at bar, Travelers contends that WM Hotel's alleged damages[1] do not constitute an "occurrence" as defined by the CGL policy, and thus it is not bound to provide coverage. The policy provides that "[T]his insurance applies to `bodily injury' and `property damage' only if the `bodily injury' and `property damage' is caused by an `occurrence' that takes place in the coverage territory." (CGL policy Sec. I(A)(1)(b)(1)). An "occurrence" is defined as "an accident, including continuous or repeated exposure to *Page 5 
substantially the same general harmful condition." (Sec. V(12)). Travelers states that WM Hotel is seeking damages for Antcil's allegedly defective workmanship, and argues that the overwhelming majority of jurisdictions hold that faulty workmanship resulting in damages to the insured's product, or damages claimed for the cost of correcting substandard, faulty or negligent work itself does not constitute an "occurrence" under a CGL policy. (See, e.g., Auto-Owners Ins. Co. v.Home Pride Companies, Inc., 684 N.W.2d 571 (Neb. 2004) (faulty workmanship, standing alone, is not covered under a standard CGL policy because it is not a fortuitous event as implied by reference to the term accident.))
WM Hotel agrees with Travelers that, the faulty workmanship of Antcil, when standing alone, does not constitute an "occurrence" under the policy. However, WM Hotel argues that Antcil's "work" was the installation of a third party's product, and that it has never claimed damages for Antcil's installation procedures. Rather, WM Hotel seeks coverage for the damages that ensued thereafter. WM Hotel surmises that there is the possibility that the failure to include a "sound deadening pad" with the tub installed in Room 431 could have weakened the tub and led to the multiple defects recounted in the report. WM Hotel further surmises that "clearly this resultant or `after the fact' damage is just the sort of fortuitous event that is covered by the CGL policy." (Plaintiff's Memorandum at 6, citing Pires, 723 A.2d at 299.)
In Employer's Mutual v. Pires, Pires, a subcontractor covered under a CGL policy, was hired to paint replacement windows and doors that were installed by the general contractor. After the painting was complete, the general contractor noticed scratches on the window panes that he believed occurred when Pires sanded the window *Page 6 
frames. As a result, the general contractor filed suit against Pires to recover for the damage to the panes, alleging negligence and breach of contract. Pires filed a declaratory judgment action seeking coverage under the CGL policy and his insurer filed a motion for summary judgment. In denying the motion, the Court noted that the record was unclear as to whether Pires "incorrectly performed" work on the damaged window panes or whether Pires damaged the panes accidentally when he performed work on the frames. The Court further noted:
 If Pires performed work on the window panes in connection with painting the window frames (for example, by taping the surface of the panes during the pre-painting process, or by cleaning and/or scraping the panes before or after applying paint to the frames) and he negligently damaged the panes as part of such a preparation or cleanup operation, then the damage would fall within the exclusion for incorrectly performed work. If, on the other hand, Pires did not intentionally perform work on the window panes in connection with painting the window frames, but only damaged them accidentally when he was performing work on the frames, then such damage would not fall within the policy's exclusion for `incorrectly performed' work on such property. Pires at 299.
WM Hotel's reliance on Pires rests with its assertion that Antcil's "work" was the installation of the tubs. From that premise WM Hotel then asserts that "[i]n this case we are discussing damage that (i) did not take place until a minimum of three to four months had passed after the completion of Antcil's installation and (ii) which was not directly inflicted by Antcil employees." (Plaintiff's Memorandum at 7.) WM Hotel then concludes, "[n]otwithstanding Travelers attempt to disguise the very clear distinction between Antcil's `work' and the `after the fact' damage to the bathtubs, such `property damage' falls squarely within the definition of `occurrence' set forth in the CGL policies. Therefore, summary judgment is not appropriate." (Id.) *Page 7 
Further, as to the "work" issue, Plaintiff states that "`[y]our work' under the CGL policies is defined as: `. . . (w)ork or operations performed by you or on your behalf. . . .'" (Pl. memo at 8.) However, Plaintiff fails to include the remainder of the definition of "your work" as is clearly expressed in the policy. The policy defines "Your work" as "a. Work or operations performed by you or on your behalf;AND b. Materials, parts or equipment furnished in connection with suchwork or operations." (Sec. V — Definitions, def. 19.) (emphasis added.) Because the bathtubs were clearly "materials, parts or equipment furnished in connection with such work or operations" the bathtubs themselves must be considered part of Antcil's "work." As the Court held in Pires, an insurer cannot be held liable under a CGL policy for an insured's negligently performed work. Accordingly, Travelers cannot be held liable for any damage to the bathtubs themselves.
Plaintiff has also alleged in its complaint that the negligence or improper work of Antcil will cause it to suffer damage for, interalia, "the cost of the reconstruction of the premises inherent in the replacement of [the] tubs." (Third Amended Complaint at para. 41(b)). Travelers argues that exclusions (m) and (n) of the CGL policy expressly exclude coverage for losses, costs or expenses which are incurred as a result of the defective or deficient condition of the insured's product or work. Exclusion (m) provides that the insurance does not apply to: "`Property damage' to `impaired property'[2] or property that has not been physically injured arising out of: (1) A defect, deficiency, inadequacy or *Page 8 
dangerous condition in `your product' or `your work'. . . ." (CGL Policy Exclusion m.) Exclusion (n) states that the insurance does not apply to:
 Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of (1) `Your product'; (2) `Your work'; or (3) `Impaired property'; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. (CGL Policy Exclusion n.)
Travelers explains that these exclusions preclude it from providing coverage for deficiencies associated with Antcil's work and, accordingly, Plaintiffs' claims for loss, cost, or expense attributable to the allegedly defective bathroom tubs, and resulting from Antcil's product or work, are excluded from coverage under the policy. This Court finds that these exclusions, in addition to the others in the policy, despite their seemingly broad scope, may not cover every type of property damage alleged to be incurred by Plaintiff.
As noted above, Plaintiff has alleged it has incurred damages due to the reconstruction of the premises in replacing the tubs. Plaintiff has not specified exactly what property damage it has incurred, but it is likely that while removing and replacing the tubs, other property such as the wall and tilework covering the flange of each tub has been damaged and must be repaired or replaced. Such damage cannot be considered "impaired property" and excluded from coverage because it doesn't incorporate Antcil's product or work. Further, damage of this type would not fall under the definitions of either "your product" or "your work" as defined in the policy. Travelers has argued that the Rhode Island Supreme Court has enforced a CGL Policy's exclusion for faulty workmanship and rejected an insured's argument that the consequences of remediating faulty work are covered. (see GeneralAccident Ins. Co. of Am. v. Am. Nat'l *Page 9 Fireproofing, Inc., 716 A.2d 751 (R.I. 1998)). In that case, American National acted as a subcontractor and installed fireproofing in a residential complex. Following a hurricane, which damaged a portion of the complex, the installation of the fireproofing was found to be defective. To remedy the defective installation, portions of the completed construction were torn down. The court affirmed the trial justice's finding that correcting the fireproofing fell within the plain meaning of an exclusion, and thus coverage under the CGL policy was precluded not only for replacing the fireproofing, but also for any other consequential damages involved in actually performing the replacement. Id. at 758. Travelers' reliance on General Accident is misplaced because the exclusions relied upon in that case are vastly different from those in the policy in this case. Rather, this Court again turns to the Pires case on this issue.
In Pires, the Court examined an exclusion in the CGL policy which stated that the insurance did not apply to "(j.) `Property damage' to: `. . .' `(6) That particular part of any property that must be restored, repaired or replaced because `your work' was incorrectly performed on it.'" Pires, 723 A.2d at 297. The policy at issue in this case contains the identical exclusion and it shares the identical number to the exclusion in Pires. The definitions of "your work" are also identical. In commenting on the scope of this exclusion, the Court noted:
 Moreover, if Pires' faulty work caused damage to other property in addition to the property on which he incorrectly performed work, then the policy's damage exclusion would not apply to this other property. Thus, even if the court found that the damage exclusion was applicable, it would apply, according to its terms, only to "that particular part of any property that must be restored, repaired, or replaced because `your work' was incorrectly performed on it." (Emphasis added.) For this reason, even if Pires damaged the window panes by incorrectly performing work on them, the excluded damage would be limited just to the cost of repairing or replacing the damaged panes. If other property also had to be repaired or *Page 10 
replaced because of the window-pane problem, then the exclusion would not apply to that other property if the contractor performed no work "on it," and the contractor would be allowed to obtain liability coverage for damages involving that other property. Id. at 299 fn. 1.
This Court finds the case at bar to be analogous to thePires case. Accordingly, if Antcil's faulty work caused damage to other property in addition to the tubs, then the CGL policy's damage exclusion would not apply to this other property. The exclusion only applies to "that particular part of any property that must be restored, repaired, or replaced because Antcil's work was incorrectly performed on it." Any other damaged property that Antcil did not perform work on would not be excluded from coverage.
 Conclusion
The Court holds that although the CGL policy is clear and unambiguous, certain damages allegedly suffered by WM Hotel are beyond the exclusions contained within the policy. As noted above, while Travelers is not required to provide coverage for faulty work performed by Antcil, WM Hotel — like the general contractor in Pires — is not precluded from seeking recovery for damages if Antcil's faulty work caused damage to other property in addition to the property on which it incorrectly performed work, because the policy's damage exclusion would not apply to this other property. Accordingly, Travelers' motion for summary judgment is denied.
Counsel shall prepare an appropriate order for entry.
[1] As it relates to Travelers, Count IV of Plaintiff's Third Amended Complaint alleges at paragraph 40; "Improper workmanship or negligence by Defendant Antcil in the installation of each tub caused defects in the same. Such defective workmanship was covered by the Commercial General Liability policy provided by Defendant Travelers."
[2] "Impaired property" is defined to mean "tangible property, other than `your product' or `your work,' that cannot be used or is less useful because: a. It incorporates `your product' or `your work' that is known or thought to be defective, deficient, inadequate or dangerous . . . if such property can be restored to use by: a. The repair, replacement, adjustment or removal of `your product' or `your work'. . . ."