DECISION
Before this Court is the motion of Furey Roofing and Construction Company ("Plaintiff" or "Insured") for summary judgment against its insurer Employers Mutual Casualty Company ("Defendant"). Plaintiff raises four issues: (1) does Defendant have a duty to defend Plaintiff in the Massachusetts proceedings; (2) does Defendant have a duty to indemnify Plaintiff in regard to the Massachusetts proceedings; (3) should Defendant reimburse Plaintiff for the attorney's fees, costs, and expenses incurred in the Massachusetts proceedings; and (4) does Defendant have a duty to indemnify Plaintiff for the expenses of this Declaratory Judgment action.
 I Facts Travel
Plaintiff filed a declaratory judgment against its insurer, Defendant, for Defendant's refusal to defend Plaintiff in a law suit in Massachusetts. The central issue is whether Defendant has a duty to defend Plaintiff in the Massachusetts proceedings. If Defendant must defend Plaintiff, then the Court must also address whether Plaintiff is entitled to damages for Defendant's breach of the insurance contract. *Page 2 
Plaintiff was sued in Massachusetts for matters related to its work on the Police and Fire Station in the Town of Somerset ("Somerset"). The following is a brief summary of the relevant facts, which occurred between 2001 and 2008. Somerset hired Barr, Inc. ("Barr") as its general contractor to build a new Police and Fire Station. Initially, Barr hired Capeway Roofing Systems ("Capeway") as its roofing subcontractor to install a preformed metal roofing system. In order to obtain the manufacturer's warranty on this roof, the manufacturer, Merchant and Evans, Inc. ("Merchant") had to inspect and approve the roof. Merchant did not approve of Capeway's work and refused to activate the warranty, so Barr terminated its contract with Capeway. Barr subsequently hired Plaintiff to replace Capeway as the roofing subcontractor. It appears that Plaintiff completed its work for Barr around July 2006. Again, Merchant refused to activate the warranty. As a direct result of Barr's failure to procure the roof warranty from Merchant, Somerset terminated its contract with Barr on September 17, 2008.
The litigation began in 2005 — while Plaintiff was still working on the project — when Capeway sued Barr for non-payment. Barr promptly counterclaimed against Capeway. On December 23, 2008, Barr filed the underlying Third Party Complaint against Somerset, Merchant, and Plaintiff. Two counts are directed at Plaintiff. The first count seeks: (1) a declaratory judgment on the extent to which Plaintiff is liable for the failure to obtain the roof warranties; and (2) compensation to the extent that Plaintiff is liable in an amount to be determined at trial. The second count is a breach of contract action claiming that to the extent Plaintiff is liable for its failure to comply with Merchant's installation requirements, it is liable to Barr for damages.
With respect to the instant action, Plaintiff notified Defendant, its insurer, on February 3, 2009 of Barr's suit. Plaintiff requested a defense and indemnity in regard to the Third Party *Page 3 
Complaint. In a letter dated February 16, 2009, Defendant refused to defend Plaintiff in that action. Plaintiff filed this complaint on May 15, 2009 and subsequently filed an amended complaint on May 26, 2009. On August 14, 2009 Plaintiff filed the present motion for summary judgment. Defendant filed an objection to this motion on October 9, 2009.
 II Standard of Review
This Court will only grant a motion for summary judgment if "after reviewing the admissible evidence in the light most favorable to the non-moving party[,]" Liberty Mut. Ins. Co. v. Kaya,947 A.2d 869, 872 (R.I. 2008) (quoting Roe v. Gelineau,794 A.2d 476, 481 (R.I. 2002)), "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Super. R. Civ. P. 56(c).
In opposing a motion for summary judgment, the nonmoving party "`has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" Liberty Mut., 947 A.2d at 872 (quotingD'Allesandro v. Tarro, 842 A.2d 1063, 1065 (R.I. 2004)). To meet this burden, "`[a]lthough an opposing party is not required to disclose in its affidavit all its evidence, he [or she] must demonstrate that he [or she] has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact.'" Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998) (quoting Gallo v. Nat'l NursingHomes, Inc., 106 R.I. 485, 489, 261 A.2d 19, 21-22 (1970)). *Page 4 
 III Discussion A Duty to Defend
"In general, the duty to defend an insured in this jurisdiction is determined by applying the `pleadings test.'" ShelbyIns. Co. v. Ne. Structures, Inc., 767 A.2d 75, 76 (R.I. 2001) (citing Peerless Ins. Co. v. Viegas,667 A.2d 785, 787 (R.I. 1995)). It is well settled that "if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured, regardless of the actual details of the injury or the ultimate grounds on which the insured's liability to the injured party may be predicated." Employers' Fire Ins. Co. v.Beals 103 R.I. 623, 631, 240 A.2d 397, 402 (1968). The pleadings test applies "even if any of the allegations of the suit are groundless, false or fraudulent." Emhart Indust., Inc. v. CenturyIndem. Co., 559 F.3d 57, 67 (1st Cir. 2009). "Furthermore, any doubts as to the adequacy of the pleadings to encompass an occurrence within the coverage of the policy are resolved against the insurer and in favor of its insured." Beals,103 R.I. at 633, 240 A.2d at 403.
First, the Court must determine if there was an occurrence. Second, if there was an occurrence, the Court must determine whether it was covered by the insurance policy. Only a finding of a covered occurrence will trigger the insurer's duty to defend. For this analysis the Court will consider two documents: (1) the complaint filed by Barr against Plaintiff, and (2) the insurance policy. *Page 5 
 1. Was there an occurrence?
The Rhode Island Supreme Court has defined "occurrence" as:
 an event that results in compensable property damage during the policy period. In other words, there can be no occurrence under the policy without property damage that becomes apparent during the policy period, and property loss and compensable damages cannot be assessed unless the property damage is discovered or manifests itself. "Property damage" and "occurrence" are thus inextricably intertwined. CPC Int'l, Inc. v. Northbrook Excess Surplus Ins. Co., 668 A.2d 647, 649 (R.I. 1995).
Thus, there must be allegations of compensable property damage in the pleadings in order for there to be an "occurrence."
The pleadings at issue contain two counts against Plaintiff: Counts II and V. Particularly relevant here is Count II, which seeks a declaratory judgment against Plaintiff:
 To the extent that Furey Roofing is responsible for the failure to issue/obtain the roof warranties and the damages flowing therefrom, and/or to the extent that it is determined that Furey Roofing's work was inadequate, defective, deficient and in breach of the Furey Subcontract, then Furey Roofing is liable to Barr in an amount to be determined at trial, with interest, attorney's fees, costs and such other relief as this court deem just and proper. (Barr's Compl. ¶ 48.)
Count II not only seeks a declaratory judgment to determine the extent of Plaintiff's responsibility for Barr's failure to obtain the roof warranties, but also seeks compensatory damages in the event that Plaintiff is found liable for any "inadequate, defective, [or] deficient" work. Therefore, Count II plainly alleges property damage and seeks compensation.
Defendant argues that the pleadings do not specify any actionable property damage. The insurance policy defines "property damage" as both "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . [and] Loss of use of tangible property that is *Page 6 
not physically injured." Admittedly, there is no express allegation of property damage in the counts against Plaintiff. However, the complaint taken as a whole provides sufficient information to find that Barr is suing Plaintiff for property damage resulting to some extent from one of the parties' allegedly deficient work. Plaintiff argues, and the Court agrees, that the pleadings sufficiently allege an occurrence of property damage because: (1) damage to the Somerset property from the original roof leaks remains unresolved; (2) if Plaintiff's work needs to be corrected, it may be necessary to make repairs to the sections of the roof installed by Capeway; or (3) in order to repair the roof, it may be necessary to repair and replace work performed by other subcontractors — the gutters were neither furnished nor installed by Plaintiff and the rooftop HVAC units were also furnished by another subcontractor. It is clear that at least four separate contractors and/or suppliers provided materials and performed work on or relating to the roof on the Somerset building. Any one of these occurrences would be sufficient to trigger Defendant's duty to defend Plaintiff in the Massachusetts action.
 2. Is this Occurrence Covered by the InsurancePolicy?
Defendant further argues that even if there was an occurrence, coverage is nonetheless excluded by the so-called work-product exclusions. "As a general proposition, this Court applies the same rules when construing insurance policies as it does when construing contracts." Employers Mut. Cas. Co. v. Pires,723 A.2d 295, 298 (R.I. 1999). The insurance policy here is a Commercial General Liability ("CGL") policy. The policy specifically excludes coverage for:
 j. Damage to Property
 "Property damage" to:
 . . . .
 (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or *Page 7 
 (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
 . . . .
 l. Damage to Your Work
 "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.
 . . . .
 Section V — Definitions
 22. "Your Work":
 a. Means:
 (1) Work or operations performed by you or on your behalf; and
 (2) Materials, parts or equipment furnished in connection with such work or operations.
 b. Includes
 (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
 (2) The providing of or failure to provide warnings or instructions.
When interpreting insurance policies similar to the one in dispute, the court held that "[a]bsent any ambiguity in the policy's language, we will apply the exclusion as written unless doing so would render illusory the coverage provided." Pires,723 A.2d at 299. Notably, in Pires, language identical to section j(6) above was found to be unambiguous. Id.
In Pires the issue was whether the subcontractor — the insured seeking a defense from his insurer — accidentally damaged the window frames or incorrectly performed work on the window frames. Id. On appeal, our Supreme Court vacated the summary judgment ruling, finding a dispute of material fact. Our Supreme Court observed that if the damage was accidental it was covered by the policy, but if the damage was caused by negligently performed work it was excluded. Id. Pires is relevant here because it distinguishes between accidental property *Page 8 
damage — which is covered by the insurance policy — and property damage caused by negligent work — which is excluded. Id. In the instant matter, two separate roofing subcontractors worked on the roof which was supplied by a third party manufacturer. In addition, two subcontractors installed building components on or in proximity to the roofing system. Thus, there is a dispute here as to whether Plaintiff negligently or accidentally damaged the roof, or did no harm at all.
In Shelby, our Supreme Court reflected on its decision inPires and found that the bracing of a structure could not be separated from the structure itself for a wood framed stable. 767 A.2d at 77. Our Supreme Court held that "unlike the work in Pires, the construction of the supports cannot be separated from the construction of the remainder of the structure for the purposes of recovery under the insurance policy, thereby falling within the exclusions j(5) and j(6)." Id.
(interpreting language identical to Plaintiff's insurance policy). In the present matter, a question of fact remains as to the nature of the property damage and who caused it.
With respect to exclusionary clause j(5), Plaintiff worked on the Somerset building to fulfill its contractual obligations with Barr. As alleged, it is unclear if the property damage arose out of Plaintiff's operations on that structure. Because the damages may be the result of Capeway's earlier roofing work or that of another subcontractor for Barr, the complaint is "potentially within the risk coverage of the policy, [thus,] the insurer has anunequivocal duty to defend." Beals,103 R.I. at 632, 240 A.2d at 403 (emphasis added). Similarly with respect to exclusion j(6), there is no evidence that Plaintiff negligently performed its work. It is possible that other subcontractors incorrectly performed work which resulted in property damage to Plaintiff's work. Therefore, the property damage is potentially outside the scope of the coverage exclusion. *Page 9 
In general, if the insured damages its own work, coverage is excluded pursuant to § l. But here, it is possible that other subcontractors damaged Plaintiff's work for which coverage is not excluded. The purpose of the Massachusetts proceedings is to determine who is liable for the property damage related to the Somerset building's metal roofing system. At this time liability is unclear and the Court is unable to determine what role, if any, Plaintiff played in the alleged property damage. Furthermore, it would be wasteful for this Court to adjudicate the liability of Plaintiff where the "same issue is a vital one to be resolved in the ensuing damage action" brought by Barr in Massachusetts.Id. at 631, 240 A.2d at 402.
Mindful of the broad scope of the Beals test and the policy that all doubts are resolved in favor of the insured, the pleadings show that Barr seeks compensation for alleged property damage that may not have been caused by Plaintiff's workmanship but rather, was caused by another subcontractor. Public policy favors insurance coverage; and therefore, the Court finds that Defendant has a duty to defend Plaintiff in the Massachusetts action.
 3. Damages incurred as a result of the Breach of the Duty to Defend
"If an insurer breaches its duty to defend, the majority of states hold that the measure of the insured's damages is the cost of the defense." Todd J. Weiss, A Natural Law Approach to Remedies forthe Liability Insurer's Breach of the Duty To Defend: Is Estoppel ofCoverage Defenses Just?, 57 Alb. L. Rev. 145, 146 (1993). Although there is no precedent in Rhode Island, this Court finds that the damages flowing from the breach of the duty to defend are the costs of defending oneself. Thus, in the present matter, Plaintiff is entitled to reimbursement for the cost of defending against Barr's third party complaint. *Page 10 
 4. Insufficient Evidence of Damages
Irrespective of whether attorneys' fees are a proper award in this case, the Court lacks sufficient evidence to determine if such fees are reasonable. The Rhode Island Supreme Court held:
 We conclude that affidavits or testimony establishing the criteria on which a fee award is to be based should be required. These will assist a trial justice in determining what a reasonable fee would be in a given case. It will also create a record for this court to review in those cases where an appeal is taken. Furthermore, our holding today in no way places an undue burden on parties attempting to prove this facet of damages. It is well settled that attorneys `are competent to testify as experts in determining what is a reasonable charge for legal services rendered.' Expert testimony of that kind in the form of an affidavit has been found to be adequate. Colonial Plumbing Heating Supply Co. v. Contemporary Const. Co., Inc., 464 A.2d 741, 744 (1983) (internal citations omitted).
Plaintiff submitted the affidavit of its lawyer, Roger N. LeBoeuf, the very same person who signed the accompanying memorandum of law, attesting to the reasonableness of his own fees. Attorney LeBoeuf avers that Plaintiff has incurred $13,152.50 in attorney's fess, costs, and expenses for the Massachusetts proceedings. Following the rule of Colonial Plumbing, the Court finds Attorney LeBoeuf's affidavit to be insufficient. An affidavit by a disinterested attorney, with experience in construction law, should attest to the reasonableness of any fee claim by Attorney LeBoeuf. Accordingly, the Court is unable to consider the attorney fee request because it lacks objective evidence as to the issues of necessity and reasonableness.
 B Plaintiff's Request for Attorney's Fees 1. Availability of Attorney's Fees in Declaratory Judgment Action
In general, a party that prevails in a declaratory judgment action is not entitled to money damages. But the Court "may [] grant further affirmative relief based on the declaratory *Page 11 
judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto."Capital Prop., Inc. v. State, 749 A.2d 1069, 1080 (R.I. 1999) (citing G.L. 1956 §§ 9-30-8 and 9-30-12; Sousa v. Langlois,97 R.I. 196, 196 A.2d 838 (1964)). Claims for affirmative relief, such as those for money damages, may be joined to the declaratory judgment action pursuant to "the liberal provisions of Rule 18 of the Superior Court Rules of Civil Procedure." Capital Prop.,749 A.2d at 1080 (internal citations omitted). In the instant case, the amended complaint contains one count for a declaratory judgment. This count includes requests for attorney's fees for both the underlying Massachusetts proceedings and for the present matter. The Court finds the pleadings to be sufficient and will consider the request for attorney's fees.
 2. The American Rule
The Rhode Island Supreme Court recently reaffirmed its "staunch adherence to the `American rule' that requires each litigant to pay its own attorney's fees absent statutory authority or contractual liability." Moore v. Ballard, 914 A.2d 487, 489 (R.I. 2007);see e.g. G.L. 1956 § 9-1-33 (providing for reasonable attorney fees upon showing that insurer refused to pay or settle claim in bad faith); § 9-1-45 (providing for reasonable attorney fees in a breach of contract action when the court finds an absence of a justiciable issue of either law or fact). However, our Supreme Court also noted that this rule has exceptions and recognized "th[e] Court's `inherent power to fashion an appropriate remedy that would serve the ends of justice.'"Moore, 914 A.2d at 489 (quoting Vincent v. Musone,574 A.2d 1234, 1235 (R.I. 1990)). *Page 12 
 3. Attorney's Fees Incurred in this Declaratory Judgment Action
Plaintiff urges the Court to award attorney's fees under the authority of Conanicut Marine v. Insurance Co.of North America. 511 A.2d 967 (R.I. 1986). There, our Supreme Court held that "where an insurer refuses to defend an insured pursuant to a general-liability policy, the insurer will be obligated to pay . . . the costs of defense and attorneys' fees."Id. at 971. Although Conanicut refers to attorneys' fees in its holding, the facts of that case are distinguishable from the matter at hand and as such Plaintiff's reliance is misplaced. InConanicut, the action — against the insurer for a breach of the duty to defend — occurred after a settlement was reached in the case on the merits. Id. at 969. In contrast, this Court is considering the present matter in a pre-trial posture. Moreover, the thrust of Conanicut is centered on the issue of indemnity rather than the issue of costs. Thus, the question remains whether Rhode Island law provides for an award of attorneys' fees to the insured where the insurer is found to owe a duty to defend but its duty to indemnify remains unresolved.
The issue of granting attorney's fees to the insured, if it prevails in a declaratory judgment action, has been considered but not decided in the Superior Court. The trial justice, in that matter, observed that "no decision of the Rhode Island Supreme Court squarely addresses the facts of this case." Merrimack Mut.Fire Ins. Co. v. Dufault, 2007 WL 868605 at *2 (R.I. Super).Merrimack noted that "there appears to be some split among courts as to whether the insurer must provide its insured's costs in the declaratory action." Id. (citing ApplemanInsurance Law and Practice § 4691 (1981)). Unfortunately, the trial justice was not required to decide the issue because the court found that the insurer had no duty to defend under the terms of the insurance policy. Merrimack at *3. *Page 13 
Given the Rhode Island Supreme Court's silence on this issue, the Court looks to its sister states, specifically Massachusetts and Connecticut, for enlightenment. The highest state courts in Massachusetts and Connecticut recently confronted this issue and came to opposite conclusions as to whether they will recognize an exception to the American rule for litigation against an insurer over the duty to defend.
In Wilkinson v. Citation Insurance Co., the Massachusetts Supreme Judicial Court reaffirmed prior case law that acknowledged an exception to the American rule for attorney's fees. 856 N.E.2d 829 (Mass. 2006). "[T]o be entitled to collect attorney's fees expended in connection with duty to defend litigation, the insured need only show that the insurer was obligated to undertake the defense of the case."Id. at 836. Notably, Massachusetts limited this exception to actions establishing a duty to defend and refused to extend it to the duty to indemnify. Id. The Supreme Judicial Court found that "[o]nce the duty to indemnify is established, the policy itself, and not an outside measure like attorney's fees, provides the proper basis for calculating the amount owing. Once that amount is paid, the insured has received the benefit of the policy."Id. Thus, if the Court was persuaded by Massachusetts, Plaintiff would be entitled to attorney's fees for this declaratory judgment action.
Approximately six months later, the Supreme Court of Connecticut declined to adopt a new exception to the American rule.ACMAT Corp. v. Greater New York Mut. Ins. Co.,923 A.2d 697 (Conn. 2007). In ACMAT, the trial justice found that the insured breached the duty to defend and owed attorney's fees to the insured. Id. Notably the trial justice awarded attorney's fees "despite the absence of bad faith by the insurer." Id. at 577. The Supreme Court of Connecticut began its opinion with an extensive forty-six state survey of American rule *Page 14 
exceptions for duty to defend actions.[1] Id. at 703-07. This survey even considered Wilkinson in its analysis of the current exception in Massachusetts. Id. at 705. TheACMAT court found that only seven states strictly adhere to the American rule; while the majority of states have some form of statutory or common law exception. Id. Specifically,ACMAT noted that "Idaho, Illionois, Rhode Island, South Dakota, Virginia, and Wyoming have statutes specifically authorizing attorney's fees if the insurer has engaged in bad faith behavior in insurance coverage disputes."Id. at 707 n. 11 (citing Ins. Co. of N. Am. v. Kayser-RothCorp., 770 A.2d 403, 419 (R.I. 2001); § 9-1-33).
Connecticut concluded that the "most appropriate approach to this issue" was Rhode Island's approach, which only awards attorney's fees when the insurer has engaged in bad faith conduct.ACMAT, 923 A.2d at 707-08. The Supreme Court of Connecticut held:
 Accordingly, we conclude that, even without an authorizing contractual or statutory provision, a trial court may award attorney's fees to a policyholder that has prevailed in a declaratory judgment action against its insurance company only if the policyholder can prove that the insurer has engaged in bad faith conduct prior to or in the course of the litigation. This limited exception reflects an appropriate accommodation between the policy underlying the American rule of permitting parties, including insurance companies, to litigate claims in good faith, but still provides protection to those policyholders that might confront "stubbornly litigious" insurance companies that take specious positions in order to attempt to avoid paying legitimate claims. It also reflects our "respect [for] the legislative prerogative of choosing the special circumstances under which [attorney's fees] awards may be made. . . . To put it simply, when the General Assembly want[s] to authorize the award of attorney's fees it kn[ows] how to do it." Id. at 708 (internal quotations omitted). *Page 15 
Consistent with our prior case law and cognizant that Conanicut is distinguishable from the present matter because the analysis pertains to the duty to indemnify, the Court finds that its only vehicle for granting attorney's fees is § 9-1-33. Section 9-1-33(a) provides in relevant part:
 Notwithstanding any law to the contrary, an insured under any insurance policy as set out in the general laws or otherwise may bring an action against the insurer issuing the policy when it is alleged the insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of the policy, or otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance. In any action brought pursuant to this section, an insured may also make claim for compensatory damages, punitive damages, and reasonable attorney fees.
Plaintiff has failed to plead any evidence of bad faith by Defendant. Moreover, the Court finds that there is a genuine dispute of coverage, based on Barr's vague complaint and the language of the insurance policy. Thus, the Court finds that Defendant did indeed breach its duty to defend Plaintiff, but it did not do so in bad faith. Accordingly, Plaintiff's request for attorney's fees incurred in this declaratory judgment action is denied.
 C Duty to Indemnify
The Court finds that it would be premature to rule on Defendant's duty to indemnify prior to the final adjudication of the Massachusetts proceedings on the merits. The Rhode Island Supreme Court has held that "the duty to defend is broader in its scope than the duty of an insurer to indemnify." Beals,103 R.I. at 633, 240 A.2d at 403; accordMellow v. Med. Malpractice Joint Underwriting Ass'n of RhodeIsland, 567 A.2d 367, 368 (R.I. 1989). The duty to indemnify can be "determined only after liability is finally established, [while] the duty to defend must be assessed at the outset of the case." 46 C.J.S. Insurance § 1628. Thus, "[t]he duty *Page 16 
to indemnify depends on the facts established at trial and the theory under which the judgment is actually entered in the case." 43 Am.Jur.2d Insurance § 684.
The Court declines to interpret Conanicut as estopping an insurer from denying indemnity. First, Conanicut is not the majority rule, but is consistent with a minority of jurisdictions which estop an insurer that breaches its duty to defend from raising defenses to coverage. Susan Randall, Redefining the Insurer's Dutyto Defend, 3 Conn. Ins. L.J. 221, 230 n. 24 (1997). Second, Plaintiff's reliance on Conanicut is misplaced because "[o]n at least five occasions since Conanicut (and without referencing it), the [Rhode Island Supreme Court] has held that estoppel could not be invoked to expand the scope of coverage of an insurance policy." Emhart Indust. v. Home Ins. Co.,515 F.Supp.2d 228, 261-62 (D. R.I. 2007) (citingZarrella v. Minn. Mut. Life Ins. Co.,824 A.2d 1249, 1260-61 (R.I. 2003); Leiter v. AllstateIns. Co., 725 A.2d 882, 883 (R.I. 1999) (per curiam);D'Antuono v. Narragansett Bay Ins. Co.,721 A.2d 834, 836-37 (R.I. 1998) (per curiam); Gen. AccidentIns. Co. of Am. v. Am. Nat'l Fireproofing, Inc.,716 A.2d 751, 755 (R.I. 1998); Martinelli v. TravelersIns. Cos., 687 A.2d 443, 447 (R.I. 1996)). The First Circuit, upon review of Emhart, affirmed the District Court and reiterated that "Rhode Island courts have refused the application of `estoppel' to extend insurance coverage." Emhart,559 F.2d at 77. The First Circuit established that this area of Rhode Island law was murky and avoided any further application ofConanicut. Id.
 Conclusion
First, the Court finds that Defendant has a duty to defend Plaintiff in the Massachusetts proceedings. Second, the Court finds that Plaintiff is entitled to attorney's fees for the costs of defense in the Massachusetts proceedings. However, the Court lacks sufficient evidence to award attorney's fees at this time. Third, the Court finds that Plaintiff is not entitled to attorney's *Page 17 
fees for the declaratory judgment action. Finally, the Court finds that the issue of indemnity is not ripe for adjudication.
Accordingly, Plaintiff's motion for summary judgment should be granted only as to the duty to defend. Plaintiff's motions for attorney's fees in the Massachusetts proceedings and for indemnity are denied without prejudice. Plaintiff's motion for attorney's fees for the declaratory judgment action is denied with prejudice.
[1] According to the Court's counting, all but 4 states were considered in this analysis: Oklahoma, Alaska, Nevada, and of course Connecticut.